UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------:
HELIOS & MATHESON NORTH     :
AMERICA, INC., f/k/a        :
THE A CONSULTING TEAM, INC.,:  Crotty, J.
                            :
                 Plaintiff, :  CIV. NO.: 07 CV 3600
                            :
       -against-            :  **DECLARATION OF**
                            :  **MATTI KARJALAINEN**
VEGASOFT OY, A FINNISH      :
CORPORATION,                :
                            :
                 Defendant. :
---------------------------------------------------------------:

MATTI KARJALAINEN hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief Executive Officer of the defendant, Vegasoft OY ("Defendant" or "Vegasoft"), and I submit this declaration in opposition to the motion of the plaintiff, Helios & Matheson North America, Inc. ("Plaintiff" or "Helios"), pursuant to CPLR 6301, 6311 and 6313[1] for a temporary restraining order and a mandatory preliminary injunction requiring Vegasoft to continue to provide Plaintiff with a "password generator" each quarter during the pendency of this action. Unless otherwise stated, the statements herein are based on my personal knowledge.

2. I am informed by our counsel that to be entitled to the relief sought, Helios must show (i) it has a probability of success on the merits and (ii) that without an injunction it will suffer immediate and irreparable injury. As this Declaration shows, Helios can establish neither. First, Section 18(b)(5) of the Distributor Agreement, which forms the basis of this action, expressly provides that after the termination date (now, May 10, 2007 as a result of a Notice of Termination sent in accordance with the Agreement), Helios cannot enter into any further license

---
[1] This action was originally commenced in the Supreme Court of the State of New York in the County of New York, and was removed by the Defendant on May 7, 2007. I am informed that Rule 65 of the Federal Rules of Civil Procedure governs motions for injunctive relief before this Court.

arrangements with customers for Vegasoft software. There is nothing in the agreement that states that following termination Vegasoft is required to provide a "password generator" to Helios. Yet, this is the relief Helios seeks. In fact, in the Fourth Count of the Complaint, Helios admits the contract does not contain this requirement (See, Complaint ¶ 20).

3.  With regard to the irreparable injury requirement, this Declaration establishes that neither Helios nor its customers will suffer immediate and irreparable harm. Vegasoft will offer new licenses to the former Helios customers at the same prices as Helios would, will provide the passwords to customers seeking to renew, provide all software maintenance and support, and will keep track of all licensing revenues received from those customers in the event a later accounting should be required. Therefore, Helios is not going to suffer any damages that could not be redressed by an award of money damages should it prevail on the merits. And, no user of Vegasoft Software will suffer any harm if the request for an injunction is denied.

## INTRODUCTION

4.  Plaintiff moved by order to show cause for emergency injunctive relief in connection with a non-existent "emergency" that exists only in Plaintiff's imagination. No such emergency exists.

5.  Briefly, in September of 2002, Vegasoft entered into a written Distributor Agreement (the "Distributor Agreement") with Plaintiff, pursuant to which Plaintiff was granted the exclusive right to market and license Vegasoft's proprietary computer software (the "Software") to third-parties (the "Licensed Users") in a territory comprised of the United States, Canada, Venezuela and Israel. Section 18 of the Distributor Agreement allows either party to terminate the Agreement without cause on ninety (90) days written notice. Plaintiff concedes that

on February 9, 2007, Vegasoft sent a written notice of termination to Plaintiff that is effective on May 10, 2007 (the "Termination Date"). (See, Affidavit of Salvatore Quadrino [the "Quadrino Afd."], ¶ 6).

6. Although Plaintiff had the benefit of a full 90 days to consider the effects of the written notice of termination, Plaintiff waited until May 3, 2007, to move by order to show cause in New York Supreme Court for a mandatory temporary restraining order and preliminary injunction requiring Vegasoft to provide Plaintiff with new passwords that Plaintiff could give to Licensed Users when they renew their Software licenses after the Termination Date. This so-called emergency is premised entirely upon Plaintiffs' unsubstantiated allegation that Vegasoft intends to "pull the plug" on the Licensed Users of its Software and refuse to allow them to renew their Software license agreements and continue to use the Software. (Id. at ¶8). This is false. Vegasoft has no such intention. Vegasoft is merely waiting until after the expiration of the Distributor Agreement on May 10th to contact its Licensed Users and make appropriate arrangements to allow them to renew their license agreements directly with Vegasoft, as opposed to renewing through Plaintiff. No user of Vegasoft Software will be harmed.

7. Since there is no factual basis for the allegation that Vegasoft intends to refuse to renew the Software licenses, there is no basis for granting emergency injunctive relief.

## BACKGROUND FACTS

A. <u>The Parties</u>

8. Vegasoft is a company organized and existing under the laws of Finland. Vegasoft is engaged in the business of developing and licensing its Software to high-end users

throughout the world both directly and through a small network of distributors that includes the Plaintiff.

9. Upon information and belief, Plaintiff is a domestic corporation, and engages in marketing and distributing software products developed by independent software developers such as Vegasoft.

B. The Distributor Agreement

10. In or about September 2002, Vegasoft and Plaintiff entered into a written Distributor Agreement that was drafted by Plaintiff, pursuant to which Plaintiff was granted the "exclusive right to market, support and maintain [the Software] solely in Canada, the United States, Venezuela and Israel, . . . in accordance with the terms of this agreement." (See, Distributor Agreement § 6, which is annexed hereto as Exhibit A). [2]

11. Plaintiff, in turn, licensed copies of the Software to Licensed Users in Plaintiff's sales territory using a form of written "Software License Agreement" that the parties agreed to. A copy of the Software License Agreement is attached as Schedule A to the Distributor Agreement. The Software License Agreement provides that Licensed Users would pay Plaintiff an initial license fee, and an annual renewal fee that was invoiced annually on the anniversary date of the Software License Agreement. The fees are then split between the Plaintiff and Vegasoft. (See, Distributor Agreement § 8). Plaintiff was required to send copies of executed Software License Agreements to Vegasoft. (Id. at § 10).

---

[2] Plaintiff and Vegasoft first entered into a Distributor Agreement in 1991. That Agreement governed their relationship until 2002, when the parties entered into the Distributor Agreement that is the subject of this action.

12. Section 18 of the Distributor Agreement allows either party to terminate the Distributor Agreement upon ninety (90) days notice without cause, and provides as follows:

> 18. Termination
>
> (a) This Agreement shall terminate thirty (30) days after written notice of termination by one party to the other for any breach of any provision, covenant or obligation of this Agreement, or ninety (90) days after written notice of termination by one party to other.
>
> (b) Upon termination TACT shall:
>
> (1) <u>discontinue use of the Licensed SOFTWARE</u>, except as may be specifically permitted in writing by VEGASOFT at its sole discretion for the purpose of servicing existing agreements with TACT's clients;
>
> (2) <u>remove the SOFTWARE</u> from any SOFTWARE in TACT possession or control that incorporates or uses the SOFTWARE in whole or in part;
>
> (3) <u>erase or destroy any of the SOFTWARE</u> contained in the computer memory or data storage apparatus under control of TACT;
>
> (4) <u>deliver to VEGASOFT all SOFTWARE</u> in TACT possession or control, together with all copies thereof;
>
> (5) <u>not, itself of through any agent or subsidiary sell, license, purport to license, market or otherwise deal in the SOFTWARE or any part thereof</u>, or write the same of having the same written for it based on any technical or confidential information supplied to it by VEGASOFT or pursuant to this Agreement;
>
> (6) <u>pay all amounts owing</u> to VEGASOFT according this Agreement. (Emphasis added).

13. The parties further agreed that any disputes arising under the Distributor Agreement would be arbitrated: "This Agreement shall be governed by The Board of Arbitration of the Central Chamber of Commerce in New York, U.S.A." (<u>Id.</u> at § 19[e]).

14. To use the Software, each Licensed User is provided with a password at the time the Licensed User enters into a Software License Agreement. That password is then changed

5

each year on the anniversary date of the Software License Agreement. This is a normal and customary industry practice. This insures that only Licensed Users that have properly renewed their Software licenses and paid a renewal fee have access to the Software.

15. Since Plaintiff has been responsible for renewing Software licenses, as a matter of convenience, Vegasoft provided Plaintiff with a "password generator" that allowed Plaintiff to create passwords for Licensed Users at the time they renew their Software licenses. The last iteration of the password generator allows Plaintiff to generate passwords for Software License Agreements that expire on or before March 31, 2008.

16. In an e-mail dated February 12, 2007, Vegasoft requested that Plaintiff cease using the password generator after the Termination Date, and destroy all files containing Software passwords. (A copy of this e-mail is annexed hereto as Exhibit B). Prior to filing its order to show cause, Plaintiff made no request for a password generator for use in renewing Software License Agreements that expire after the Termination Date, although it had several months in which to raise the issue.

C. <u>Plaintiff Is Not Entitled To The Relief Requested</u>

17. By its motion, Plaintiff seeks an immediate order compelling Vegasoft to provide Plaintiff with a new password generator so Plaintiff can create passwords for Licensed Users whose Software licenses expire <u>after</u> the May 10, 2007 Termination Date. (Quadrino Afd. ¶10). This lawsuit is simply a device created by Helios to do an "end around" the Termination Notice that it received, sent in accordance with the Distributor Agreement, in order to continue as a <u>de facto</u> distributor of Vegasoft Software and appropriate Vegasoft's intellectual property rights to its Software.

6

18. Plaintiff argues that if it is not permitted to issue new passwords to Licensed Users after the Termination Date, Vegasoft will fail and/or refuse to create new passwords for Licensed Users whose Software Licenses are due to expire at the end of May and in succeeding months. (Id. at ¶9). Plaintiff alleges that this failure will cause irreparable harm to Plaintiff and the Licensed Users. (Id.).

19. As an initial matter, Plaintiff's speculation that Vegasoft will refuse to renew the Software Licenses is baseless. Vegasoft will renew Software Licenses for Licensed Users who wish to continue using the Software. Vegasoft has been waiting for the passage of the Termination Date to contact Licensed Users directly and invite them to renew their Software Licenses with Vegasoft. In fact, Vegasoft intends to offer renewal licenses to these customers at the same prices that Helios would offer them for. If they choose to renew, they will be given new passwords on the anniversary dates of their Software License Agreements. Vegasoft will carefully keep track of all licensing revenues received from customers who renew. In addition, these customers will require software maintenance and support, user manuals, software upgrades, etc., which Vegasoft will provide after May 10th. Thus, no customers of Vegasoft Software will be injured if Helios' request for an injunction is denied.

20. Secondly, Plaintiff has no right under the terms of the Distributor Agreement to remain involved in any way with the renewal of Software License Agreements, and cites to no provision of that Agreement which confers Plaintiff with such a right. Once the Distributor Agreement expires, Plaintiff has no further right to process renewal requests, collect renewal fees or issue passwords. As a result, Plaintiff has no need or right to the password generator.

21. For the reasons stated above, Helios' request for a mandatory temporary restraining order and preliminary injunction should be denied.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _Helsinki_, Finland, on May _8_, 2007.

_____
MATTI KARJALAINEN