UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
HELIOS & MATHESON NORTH AMERICA, INC.,
f/k/a The A Consulting Team, Inc.,

          Plaintiff,

-against-

VEGASOFT OY, a Finnish Corporation.,

          Defendant.
----------------------------------------------------------------X

ECF
Crotty, J.
CIV. NO.: 07CV3600

AFFIDAVIT OF
SHMUEL BENTOV

STATE OF NEW JERSEY)
COUNTY OF UNION )ss.:

  SHMUEL BENTOV, being duly sworn, deposes and says:

  1. I am the President of HELIOS & MATHESON NORTH AMERICA, INC. ("HELIOS"), f/k/a The A Consulting Team, Inc. ("TACT"), a domestic corporation, and am fully familiar with the facts and circumstances herein. I give this affidavit in support of the within motion for a temporary restraining order pursuant to F.R.C.P. Sec. 65(b) and a preliminary injunction pursuant to F.R.C.P. Sec. 65(a), directing the Defendant, VEGASOFT OY ("VEGASOFT"), a corporation incorporated under the laws of Finland, to provide passwords for the renewal of certain software licenses under a written Distributor Agreement ("Agreement") between TACT and VEGASOFT, dated September 18, 2002. Said Agreement permits HELIOS to license to Clients Vega software under a standard Software License Agreement that was drawn by VEGASOFT.

  2. To understand the importance of this application it is necessary to note the long relationship between HELIOS and VEGASOFT and the role of HELIOS (formerly TACT) in

creating a market for VEGASOFT'S products in the United States. While the distributor agreement which is the subject of this dispute dates from September 18, 2002, the parties had a prior distributor agreement relating to the same products that commenced in 1991. Thus, for almost 16 years HELIOS has marketed the Vega product. The prior distributor agreement was changed to the current Agreement only to include a fee for VEGASOFT for helping with technical support. At the beginning of this special relationship VEGASOFT had **no** clients in the United States and their product line was very limited. To create a market for their products we acted as more than just a distributor. How did we do this?

3. We changed the name of products, added functionality and enhanced the product efficiency. We were instrumental in developing new products. For example, together with NBC we defined the requirements for components that are now part of the Vegasoft products. We introduced the concept of a License Renewal for the U.S. market. The industry uses a License Fee and a yearly Maintenance & Support fee. Instead, the concept of a License Renewal was developed to ensure that clients pay a yearly fee for using the product. HELIOS invented the concept of Components and a fee per component. We developed the pricing structure. HELIOS established a naming standard for the software tapes and the software fixes. Indeed, we took certain risks by introducing VEGASOFT products to our then current clients. During this introduction period we invested substantial time and effort in making sure these products work in the client's environments.

In summary, we have been part of the Americanization of the product. All of this was done to benefit both companies and our intention, and we believe VEGASOFT'S intention, was to build a permanent relationship.

4. VEGASOFT'S attempt to terminate the Agreement with respect to existing clients is not only contrary to the terms of the Agreement but, if allowed, is a substantial financial setback and hardship for HELIOS. Revenue from the license renewals exceeds $300,000.00 per year. HELIOS did not invest in a 16 year relationship only to have it terminated unilaterally. HELIOS has Software License Agreements that require an annual renewal at a price stated by VEGASOFT and HELIOS is bound to renew these licenses due to the language of the Software License Agreement with the client that was dictated by HELIOS, in writing, as part of the Agreement.

5. VEGASOFT already has contacted our clients in an attempt to destroy our business and gain full royalties for itself. This is in keeping with their prior actions in e-mailing our contractual clients on or about February 9, 2007 even before the Agreement allegedly was terminated, and informing them of the termination as well as advising that they will contact them after May 10, 2007 regarding support arrangements. More recently, they have contacted our clients (who are still under contract to us for an annual renewal) and advised them that our distributorship is terminated and that they will then have to license directly with VEGASOFT. Our clients now are contacting us and asking questions as to what is happening. Many of these clients have a long business relationship with HELIOS--some as long as 13 years! This termination not only impairs our relationship with these clients but it harms our good will and business reputation as a dependable distributor in the marketplace. Additionally, many of these clients do business with us with respect to other products. After many years of dealing with us, clients may wonder how reliable we are if they find that we now can no longer fulfill our written contractual commitment as a distributor. HELIOS could lose business with respect to other

software dealings with these clients as well. It should be remembered that all of the Clients were and are still under contract with HELIOS pursuant to the various Software License Agreements.

6. There are serious issues to be determined in the underlying litigation. As stated above, VEGASOFT has contacted our clients and advised them of our termination during the period when the clients were bound to HELIOS under a Software License Agreement. VEGASOFT has contacted our clients as recently as May 11, 2007 and advised them again that HELIOS is terminated as a distributor and that the client needs to contact VEGASOFT for continued support and license renewal. Attached as Exhibit 1 is a copy of an email sent to one of our clients, Miami-Dade County, and their inquiry to HELIOS as to whether they can contact VEGASOFT directly. I am advised that both of these actions give rise to a claim for tortious interference with contract.

7. Also, there is a clear claim for breach of contract in light of the wrongful termination and for VEGASOFT'S refusal to provide the password generator so as to allow HELIOS to renew the software license. A review of the language of the Agreement (which Agreement was drawn by VEGASOFT) regarding termination in par. 18b.(1) contains a reference to our "servicing existing agreements with TACT'S clients". Clearly this is a reference to what the parties contemplated would be an ongoing contract relating to existing clients. The reference to the discontinuance of the use of the software in the same paragraph can be read to mean that we cannot utilize the software as to new clients. Also, par.12, of the Agreement states, *inter alia*, that "TACT shall support the SOFTWARE as needed. TACT shall establish a support service to enable it to perform its obligations under this Agreement". Reading the provisions of par. 18b(1)

and par. 12 demonstrates that we have a continuing relationship with the existing clients that survives the alleged termination of the Agreement.

8. Additionally, par. 18 sets forth the requirements to be performed upon termination. Nowhere in said paragraph is there any reference to a discontinuance of actions with respect to license renewals for existing clients. If VEGASOFT contemplated that a termination is to lead to the severance of ties with existing clients it should have been stated specifically in the Agreement. After all, there is a reference to license renewal in par. 8 ["Royalties"], par. 9 ["Payment Terms"] and par. 15 ["Reports and Records"]. The reason that there is no reference to termination involving renewals is because neither party contemplated that existing contracts would be terminated. Indeed, how could they? HELIOS is bound to perform under its contracts with its clients. VEGASOFT cannot now usurp our contracts by terminating and refusing to provide the password generator necessary for the renewal of the software licenses.

9. As set forth herein, there is irreparable harm to HELIOS in loss of clients as well as loss of the good will of clients who utilize other products in addition to Vegasoft. Moreover, unless the injunction is granted HELIOS will lose credibility as a distributor in the marketplace with the attendant incalculable loss of revenue. There are serious questions going to the merits of the action as a ground for litigation.

10. Should this injunction be granted there will be minimal hardship to VEGASOFT. They still will receive their royalty of 50% per the Agreement and the Clients will stay in place pending the determination of the underlying action. There is minimal inconvenience to VEGASOFT and the *status quo* is preserved during the pendency of the case. To deny the injunction will allow VEGASOFT to siphon off the Clients that HELIOS has cultivated over a

16 year period as a distributor. Not only will there be little chance of recapturing the Clients should there be a favorable outcome to HELIOS, but the good will that we have developed over the years will be lost. A balancing of the equities clearly favor an injunction.

11. No prior application for the relief requested herein has been made previously.

WHEREFORE, it is respectfully submitted that the within motion for a preliminary injunction requiring and directing that VEGASOFT OY provide the password generator and cooperate for renewal of existing software licenses of Vega software during the pendency of this action and for a temporary restraining order requiring and directing VEGASOFT OY to provide the password generator for renewal of existing software licenses of Vega software until this motion can be heard be granted in its entirety together with such other and further relief as may be just and proper.

SHMUEL BENTOV

Sworn to before me on the 17th day of May, 2007.

Notary Public

BARRY W. SILVERSTEIN
Notary Public, State of New York
No. 02SI5054984
Qualified in Kings County
Commission Expires January 29, 2001

**TACT Software** - (A division of The A Consulting Team, Inc.)
77 Brant Avenue, Suite 320
Clark, NJ 07066

For Client Services, Contracts or Password Issues:
fmccaskill@tact.com

ForTechnical Support:
support@tact.com

---

**From:** Cardoso, Mirta Lopez (ETSD) [mailto:mlopezm@miamidade.gov]
**Sent:** Monday, May 14, 2007 1:48 PM
**To:** Felicia McCaskill
**Cc:** Waters, Margaret (DPM)
**Subject:** FW: Vegasoft renewal / MiamiDADE

Hello Felicia:

Please see note below from Vegasoft. I also spoke with their sales representative, Onni Kukkonen, and he confirmed that they will no longer distribute their products through resellers, and that we would need to establish an agreement directly with them. I just wanted to make sure that you were aware of it and that you will have no problem with us establishing a contract directly with them.

Please advise. Thank you and regards,

Mirta

> **From:** Sales [mailto:Sales@vegasoft.com]
> **Sent:** Friday, May 11, 2007 3:21 AM
> **To:** Bronson, Chris (ETSD)
> **Cc:** Matti Karjalainen
> **Subject:** Vegasoft renewal / MiamiDADE
>
> Hi Chris
>
> As you might already know Vegasoft the Distributor Agreement between Vegasoft and Helios & Matheson North America (HMNA a.k.a TACT) is now terminated.
>
> Please be advised that in order to get product keys, support and upgrades after the ongoing maintenance period a new license agreement with Vegasoft is needed.
>
> Please let us know the name and e-mail address of the person handling license agreements and ask him or her to contact sales@vegasoft.com. We do our utmost for the uninterrupted continuation of the usage of VEGA in MiamiDADE.
>
> We apologize for any inconvenience and thank you for your help.
>
> Vegasoft support team.
>
> *Disclaimer:* This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message. You are hereby also notified that any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited and may harm the interests of the sender.