UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------:
HELIOS & MATHESON NORTH :
AMERICA, INC., f/k/a :
THE A CONSULTING TEAM, INC., :           Crotty, J.
                              :
          Plaintiff, :                   CIV. NO.: 07 CV 3600
                              :
     -against- :                         **DECLARATION OF**
                              :          **MATTI KARJALAINEN**
VEGASOFT OY, A FINNISH :
CORPORATION, :
                              :
          Defendant. :
-------------------------------------------------------:

MATTI KARJALAINEN hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief Executive Officer of the defendant, Vegasoft OY ("Defendant" or "Vegasoft"), and I submit this declaration in opposition to the motion of the plaintiff, Helios & Matheson North America, Inc. ("Plaintiff" or "Helios"), pursuant to Rule 65 of the Federal Rules of Civil Procedure for a mandatory preliminary injunction requiring Vegasoft to continue to provide Plaintiff with a "password generator" each quarter during the pendency of this action. Unless otherwise stated, the statements herein are based on my personal knowledge.

2. I am informed by our counsel that to be entitled to the relief sought, Helios must show (i) it has a probability of success on the merits and (ii) that without an injunction it will suffer immediate and irreparable injury. As this Declaration shows, Helios can establish neither. First, Section 18(b)(5) of the Distributor Agreement, which forms the basis of this action, expressly provides that following the termination of the Distributor Agreement – which occurred on May 10, 2007 – Helios cannot enter into any further license arrangements with customers for Vegasoft software. There is nothing in the agreement that states that following termination Vegasoft is required to provide a "password generator" to Helios. Yet,

#1178083 v1

this is the relief Helios seeks. In fact, in the Fourth Count of the Complaint, Helios admits the contract does not contain this requirement (See, Complaint ¶ 20).

3. With regard to the irreparable injury requirement, this Declaration establishes that neither Helios nor its customers will suffer immediate and irreparable harm. Vegasoft will offer new licenses to the former Helios customers at the same prices as Helios would, will provide the passwords to customers seeking to renew, provide all software maintenance and support, and will keep track of all licensing revenues received from those customers in the event a later accounting should be required. Therefore, Helios is not going to suffer any damages that could not be redressed by an award of money damages should it prevail on the merits. And, no user of Vegasoft Software will suffer any harm if the request for an injunction is denied.

## INTRODUCTION

4. Helios moved by order to show cause for emergency injunctive relief in connection with a non-existent "emergency" that exists only in Helios's imagination. No such emergency exists.

5. Briefly, in September of 2002, Vegasoft entered into a written Distributor Agreement (the "Distributor Agreement") with Helios, pursuant to which Helios was granted the exclusive right to market and license Vegasoft's proprietary computer software (the "Software") to third-parties (the "Licensed Users") in a territory comprised of the United States, Canada, Venezuela and Israel. Section 18 of the Distributor Agreement allows either party to terminate the Agreement without cause on ninety (90) days written notice. Helios admits that on February 9, 2007, Vegasoft sent a written notice of termination to Plaintiff that is effective on May 10, 2007 (the "Termination Date"). (See, Affidavit of Salvatore Quadrino [the "Quadrino Afd."], ¶ 6).

6. Although Helios had the benefit of a full 90 days to consider the effects of the written notice of termination, Helios waited until May 3, 2007, to move by order to show cause in New York Supreme Court for a mandatory temporary restraining order and preliminary injunction requiring Vegasoft to provide Helios with new passwords that Helios could give to Licensed Users when they renew their Software licenses <u>after</u> the Termination Date. This so-called emergency was premised entirely upon Plaintiffs' unsubstantiated allegation that Vegasoft intends to "pull the plug" on the Licensed Users of its Software and refuse to allow them to renew their Software license agreements and continue to use the Software. (<u>Id.</u> at ¶8). This is false. Vegasoft has no such intention. Vegasoft was merely waiting until <u>after</u> the expiration of the Distributor Agreement on May 10th to contact its Licensed Users and make appropriate arrangements to allow them to renew their license agreements directly with Vegasoft, as opposed to renewing through Plaintiff. No user of Vegasoft Software will be harmed.

7. Since there is no factual basis for the allegation that Vegasoft intends to refuse to renew the Software licenses, there is no basis for granting emergency injunctive relief.

## BACKGROUND FACTS

8. Vegasoft is a small Finnish computer software developer, and Helios is a domestic corporation (formerly known as "The A Consulting Team, Inc.") engaged in many business activities, including marketing and distributing computer software products developed by a number of independent software developers including Vegasoft. The parties have done business together for nearly sixteen years.

### A. The First Distributor Agreement

9. The undisputed facts show that the termination section of the Distributor Agreement at issue, which defines the parties' rights upon termination, was drafted by Helios, not Vegasoft.

#1178083 v1                                    3

10.     In 1991, the parties entered into their first written Distributor Agreement ( the "First Distributor Agreement"), in which Helios agreed to market and license computer software (the "Software") developed by Vegasoft to third-party users (the "Licensed Users") in the United States, Canada, and Israel. Because Vegasoft had no prior experience doing business in the United States, it relied upon Helios to provide a draft of the Distributor Agreement and all of the attached schedules, which was then fine-tuned by the parties.

11.     In the First Distributor Agreement, the termination section (§ 19) was drafted by Helios and it was not changed by Vegasoft when it fine-tuned other sections of the agreement. This termination section continued in haec verba in the next Distributor Agreement discussed below, apart from the addition of a single provision that requires Helios to "[p]ay all amounts owing to VEGASOFT according this Agreement" on termination (§ 18[b][6]).

12.     The First Distributor Agreement provided that Helios would license the Software to Licensed Users for one year terms pursuant to an agreed standard form of "Software License Agreement" between Helios and the Licensed Users that was attached to the Distributor Agreement as Schedule "A". (A complete copy of the First Distributor Agreement and the Schedules, is annexed hereto as Ex. A).

13.     The Software License Agreement contained a section entitled "Limitation Of Liability" which capped any damage claim against Helios by its licensees for breach of contract, and provided as follows:

> [Licensed User] agrees that except for liability for infringement of any UNITED STATES OF AMERICA patent of (sic) copyright, trade secret or other proprietary right, [Helios's] LIABILITY for damages, regardless of the form of action, is limited to the license fee received under this agreement.
>
> In no event will [Helios] be liable for any consequential damages, even if [Helios] has been advised of the possibility of such damages.

14. To facilitate the negotiation of Software License Agreements with potential users, Helios had the discretion and authority to deviate from the terms of the agreed standard form of Software License Agreement as necessary, and Helios did not consult with Vegasoft concerning the terms that Helios ultimately negotiated and agreed to.

15. The Software licenses were renewable by the Licensed Users on a year to year basis upon payment of a renewal fee. Vegasoft provided upgrades to the Software, and necessary instruction manuals and technical support, and Helios supported and maintained the Software as needed by the Licensed Users. Vegasoft and Helios agreed to split the initial license fee and the annual renewal fees 50-50.

16. In order to use the Software, each Licensed User was given a password when it entered into a Software License Agreement. The password was then changed on every anniversary date of the Software License Agreement. As a matter of convenience, Vegasoft provided Helios with a "password generator" that allowed Helios to create new passwords for Licensed Users at the time the Users renewed their Software licenses.

B. **The Second Distributor Agreement**

17. In June of 2002, Onni Kukkonen of Vegasoft, sent a series of e-mails to Shmuel Bentov of Helios, concerning updates to the First Distributor Agreement. (See Declaration of Onni Kukkonen ¶ 3; the "Kukkonen Dec."). Copies of the e-mails that Mr. Kukkonen and Mr. Bentov exchanged are annexed hereto as Ex. B, and as Ex. A to the accompanying Kukkonen Dec.

18. In his first e-mail, dated June 25, 2002, Mr. Kukkonen noted that the description of Vegasoft's Software products needed to be expanded to include new software products that had been developed during the 11 year period since the First Distributor Agreement was entered into, and further stated that he wanted to clearly define the level of customer support each company was responsible for under the Software License Agreement.

(Id. at ¶ 4). At the time this exchange took place, Vegasoft was under pressure to decide whether to hire a support person at a salary of $80,000 to assist Vegasoft in providing software support to the Licensed Users, so it was important to Mr. Kukkonen to define each parties' area of responsibility to the Licensed Users. (Id.). In an e-mail, dated June 26, 2002, Mr. Bentov agreed that the First Distributor Agreement needed to be updated. (Id.).

19.  To speed up the process of revising the First Distributor Agreement, Mr. Kukkonen undertook to revise the First Distribution Agreement himself, to add "a more exact definition of the Level I tech support in section 12." (See, Mr. Kukkonen's e-mail, dated June [kesäkuuta] 26 13:04). (Id. at ¶ 5). Although Mr. Kukkonen sent several e-mails to Mr. Bentov requesting his comments to the proposed revisions, it was not until August 28, 2002, that Mr. Bentov sent his comments/"corrections" to the proposed revised Distributor Agreement. (See, Mr. Bentov's e-mail, dated August [elokuuta] 28, 2002 21:48). (Id).

20.  Mr. Kukkonen accepted all of Mr. Bentov's changes and sent Mr. Kukkonen a final version of the Second Distributor Agreement for execution. (See, Mr. Kukkonen's e-mail, dated August [elokuuta] 29, 2002 16:10). (Id. at ¶ 6). (A copy of the Second Distributor Agreement is annexed hereto as Ex. C).

21.  A Comparison of the First Distributor Agreement and the Second Distributor Agreement reveals that the documents are substantially similar, and the differences in the two documents are not material to the issues before this Court. No changes were suggested or made to the termination provision of the First Distributor Agreement, which had been drafted by Helios, apart from adding a provision that requires Helios to pay all amounts owing to Vegasoft when the Distributor Agreement is terminated.

22.  No substantive changes were made to the Software License Agreement that was originally attached as Schedule A to the first Distributor Agreement. (In fact, it appears

that the <u>only</u> change in the form of Software License Agreement was changing the punctuation in the section entitled "LICENSE").

23.     Section 18(a) of the Second Distributor Agreement allows either party to terminate the Agreement without cause on 90 days written notice. Once the Second Distributor Agreement terminated, Helios has no further right or authority under the Second Distributor Agreement to (i) contact Licensed Users concerning the software without Vegasoft's consent, (ii) renew Software licenses, or (iii) receive any monies when and if the Software licenses are renewed. Vegasoft, on the other hand, has the right to contact the Licensed Users of Vegasoft's Software directly, support and maintain the software as needed, and renew their Software licenses.

24.     Termination of the Second Distributor Agreement has no effect upon unexpired Software License Agreements between Helios and Licensed Users. Those Agreements remain in full force and effect until they expire according to their terms or are renewed by the Licensed Users with Vegasoft, or a corporation designated by Vegasoft to succeed Helios. Until such time, Helios and Vegasoft continue to provide service to the Licensed Users.

25.     At no time did Vegasoft agree with Helios during their negotiation of the First Distributor Agreement or the Second Distributor Agreement that following the termination of either version of the Distributor Agreement, Helios would have the right to (i) renew Software licenses for all of the Licensed Users then extant, or any sub-set of those Licensed Users, or (ii) collect annual renewal fees. (Kukkonen Dec. at ¶ 11). Moreover, there was no discussion between the parties during the negotiation of either version of the Distributor Agreement about the possibility that some Licensed Users might not be able to contract directly with Vegasoft. (<u>Id.</u>). This is why the Distributor Agreement does not contain the language that Helios is asking this Court to insert.

26.   Indeed, as recently as May 10, 2007, the return date of Helios's order to show cause, Vegasoft was unaware of exactly which Licensed Users, if any, had restrictions upon their ability to enter into Software License Agreements, and Helios never advised Vegasoft that such restrictions existed.[1]  As a result, any suggestion that the parties agreed during their negotiation of either version of the Distributor Agreement to allow Helios to continue to renew Software licenses after the Distributor Agreement was terminated, is false.

27.   Moreover, Section 19(a) of the Second Distributor Agreement contains an integration clause that provides that "[t]his Agreement states the entire agreement between the parties and supersedes all agreements and proposals, oral or written, and all other communications between the parties to this Agreement."

### C.   The Termination Notice

28.   On February 9, 2007, Vegasoft gave written notice to Helios that it was terminating the Second Distributor Agreement, effective as of May 10, 2007 (the "Termination Date").  It is undisputed that this notice was permitted and effective under the terms of the Second Distributor Agreement.

29.   On February 12, 2007, Vegasoft sent a follow-up e-mail to Helios requesting that Helios cease using the password generator, and destroy all files containing Software passwords.  Helios never raised an issue concerning this request until Helios served its order to show cause on the eve of the Termination Date.

### D.   The Order To Show Cause

30.   On May 2, 2007, Helios commenced this action by filing a Verified Complaint (the "Complaint") in New York Supreme Court, New York County, together with an order to show cause and a supporting affidavit from Helios's Chief Financial Officer, Salvatore

---

[1]   Upon information and belief, on May 11, 2007, John Carlson, Esq., counsel for Vegasoft, wrote and faxed a letter to counsel for Helios requesting a list of Licensed Users who Helios maintains are allegedly not "permitted" to renew their Software licenses with a foreign corporation.  Upon information and belief, that letter was never replied to.

Quadrino. Helios sought, inter alia, a temporary and a preliminary mandatory injunction compelling Vegasoft to provide Helios with a new password generator to enable it to renew Software licenses after the May 10, 2007 Termination Date.

31. On May 7, 2007, Vegasoft removed the action to the District Court. On May 9, 2007, Vegasoft served and filed a Declaration from me, dated May 8, 2007, and a letter brief, dated May 9, 2007, in opposition to Helios's motion for temporary injunctive relief.

### E. The Hearing On Helios's Motion For Temporary Injunctive Relief

32. On May 10, 2007, a hearing was held before this Court on Helios's motion for a temporary mandatory injunction, and the Court denied Helios's motion for temporary relief and set the matter down for an evidentiary hearing on May 21, 2007.

### PLAINTIFF IS NOT ENTITLED TO THE RELIEF REQUESTED

33. By its motion, Helios seeks an immediate order compelling Vegasoft to provide Helios with a new password generator so Helios can create passwords for Licensed Users whose Software licenses expire after the May 10, 2007 Termination Date. (Quadrino Afd. ¶10). This lawsuit is simply a device created by Helios to do an "end around" the Termination Notice that it received, sent in accordance with the Distributor Agreement, in order to continue as a de facto distributor of Vegasoft Software and appropriate Vegasoft's intellectual property rights to its Software.

34. Helios argued that if it was not permitted to issue new passwords to Licensed Users after the Termination Date, Vegasoft would fail and/or refuse to create new passwords for Licensed Users whose Software Licenses are due to expire at the end of May and in succeeding months. (Id. at ¶9). Plaintiff alleged that this failure would cause irreparable harm to Plaintiff and the Licensed Users. (Id.).

35. As an initial matter, Helios's speculation that Vegasoft would refuse to renew the Software Licenses was baseless. Vegasoft will renew Software Licenses for Licensed

Users who wish to continue using the Software. Vegasoft was merely waiting for the passage of the Termination Date to contact Licensed Users directly and invite them to renew their Software Licenses with Vegasoft. In fact, Vegasoft intends to offer renewal licenses to these customers at the same prices that Helios would offer them for. If they choose to renew, they will be given new passwords on the anniversary dates of their Software License Agreements. Vegasoft will carefully keep track of all licensing revenues received from customers who renew. In addition, these customers will require software maintenance and support, user manuals, software upgrades, etc., which Vegasoft will provide from May 10th forward. Thus, no customers of Vegasoft Software will be injured if Helios's request for an injunction is denied.

36. Secondly, Helios has no right under the terms of the Distributor Agreement to remain involved in any way with the renewal of Software License Agreements, and cites to no provision of that Agreement which confers Helios with such a right. Once the Distributor Agreement expired, Helios had no further right to process renewal requests, collect renewal fees or issue passwords. As a result, Plaintiff has no need or right to the password generator.

37. For the reasons stated above, Helios's request for a preliminary MANDATORY injunction should be denied.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. Executed in Helsinki, Finland, on May 17, 2007.

_____
MATTI KARJALAINEN

#1178083 v1

10