# EXHIBIT A

N6

# AGREEMENT

This agreement is made between

VEGASOFT OY
("VEGASOFT")
A company incorporated in Finland and having its
registered office at Harakkamyllyntie 23, Helsinki, Finland 00920

AND

THE A CONSULTING TEAM, INC.
("TACT")
A company registered in the U.S.A and having its
registered office at 7 East 14th Street, New York, New York.

WHEREAS   VEGASOFT is the sole owner of the software package(s) known as

VG-IRIS/DB2

and TACT will market this product under the name known as

ADS/DB2

and hereafter referred to as "SOFTWARE", and

WHEREAS   VEGASOFT and TACT have agreed for the appointment of TACT as the sole distributor for the SOFTWARE in the geographical area identified in paragraph 6 ("TERRITORY") on the terms and conditions of this Agreement.

WHEREAS   VEGASOFT intends to continue to produce, modify, upgrade, maintain and support the SOFTWARE with respect to areas outside the TERRITORY and desires to provide TACT with such above services with respect to the TERRITORY, and TACT desires to receive such services with respect to the TERRITORY; and

WHEREAS   VEGASOFT wishes to grant to TACT and TACT wishes to be granted, the right to use the marks with respect to the TERRITORY; and

NOW THEREFORE, THE PARTIES HAVE DECLARED, STIPULATED AND AGREED IN EXCHANGE FOR THE MUTUAL PROMISES AND COVENANTS HEREIN CONTAINED, AS FOLLOWS:

A.  **OWNERSHIP**

1. TACT agrees that SOFTWARE is the sole property of VEGASOFT and by this Agreement, TACT shall gain no interest in SOFTWARE as herein provided.

2. TACT agrees that any trademarks or service marks which VEGASOFT may own or obtain with regard to SOFTWARE are the sole property of VEGASOFT, and TACT is hereby granted the use of such marks only as a tool to market SOFTWARE, and such use by TACT shall not give or create any ownership or other rights to said trademarks and service marks. TACT may utilize the VEGASOFT name in promotional materials as desired.

3. TACT agrees that no modifications, deletions, or additions to SOFTWARE will be made by TACT employees or agents of TACT without prior written consent from VEGASOFT. All such modifications become the property of VEGASOFT.

4. TACT agrees that SOFTWARE contains trade secrets and other confidential information which are the sole property of VEGASOFT and acknowledges that unauthorized disclosure of said trade secrets and confidential information may cause irreparable harm to VEGASOFT, and therefore, TACT will:

    (i)   Use such trade secrets and confidential information solely for the purposes of this agreement;

    (ii)  Use all reasonable care to prevent other parties from learning of these trade secrets.

    (iii) Take all reasonable steps to prevent duplication of or unauthorized access to SOFTWARE by TACT employees or any other party; and

    (iv)  Allow its employees access to the SOFTWARE only for the fulfillment of TACT's obligations under this Agreement.

5. TACT and VEGASOFT agree that each is an independent contractor with regard to this Agreement. No debts or obligations shall be incurred by either party in the other party's name, and neither party shall be responsible or liable for the debts and obligations of the other party.

B.  **SALES AREA AND TERMS**

6. TACT is granted the exclusive right to market, support and maintain SOFTWARE solely in Canada, the United States and Israel, its possessions, properties and commonwealths in accordance with the terms of this agreement. "Exclusive" shall mean that VEGASOFT will not set up any other agreement and will not market SOFTWARE in the TERRITORY during the term of this Agreement. TACT shall not market the SOFTWARE outside the TERRITORY without VEGASOFT's prior written consent.

7. The initial term of this Agreement shall run for a minimum of seventeen (17) months from <u>August 1, 1991</u> through <u>December 31, 1992</u>.

    In the case that TACT has reached the minimum sales requirement listed below during the initial period, this Agreement shall automatically be renewed for an unlimited period until terminated in accordance with the provision of this Agreement:

    <u>12</u> Installations (either fully paid up or on <u>trial basis</u>.)

C.  **COMPENSATION**

8. License Fee

    The amount of the License Fee payable in consideration of the grant of licenses of the SOFTWARE in the TERRITORY will be determined by the VEGASOFT price list applicable at that time for the TERRITORY. Discounts to clients shall not be made without the written approval of VEGASOFT, provided that the parties may agree in writing to a general discount structure for clients. The license fees and schedule of discounts will be subject to annual review by VEGASOFT and TACT.

9. Royalties

    (i) TACT shall pay to VEGASOFT a percentage of all payments received by TACT on account of license and/or renewal fees for the SOFTWARE as follows:

    25%  for the First US$100,000 in gross sales
    35%  for US$100,001 to US$200,000 in gross sales
    40%  for US$200,001 to US$300,000 in gross sales
    50%  for US$300,001 and over in gross sales

    The cost of on-site installation(s) of SOFTWARE will be subtracted from the payments of gross sales to be made to VEGASOFT up to a maximum of $2,500 per site. No on-site installation cost may be deducted if VEGASOFT personnel are also on site.

    TACT shall verify the cost of on-site installation(s) of SOFTWARE to VEGASOFT with appropriate receipts and the cost of labor will be based on $750.00 per person/per day.

10. **Payment Terms**

    (i)  TACT will provide to VEGASOFT a monthly statement within ten (10) days of the end of each month of all invoices issued and payments received on account of license and renewal fees for the SOFTWARE. TACT shall transfer all payments due to VEGASOFT within ten (10) days of the end of each month.

    (ii)  TACT shall charge the client for all "Import", sales tax, "V.A.T." or like taxes imposed by the local governments.

    (iii)  In the event that TACT is required by any law or regulation to make any withholding of tax from any payment to VEGASOFT as herein provided, TACT shall be entitled to withhold such tax in accordance with the applicable law or regulation.

11. A SOFTWARE sale shall be considered complete upon the receipt by TACT of a Software License Agreement in the standard form signed by the Client. TACT will generate the client's copy of SOFTWARE only after completion of the sale. TACT and client shall each sign the Agreement. VEGASOFT shall receive a copy of each completed Software License Agreement. The form of the standard Software License Agreement is attached to this Agreement as Schedule "A".

12. **Transfer of Rights**

    a.  VEGASOFT undertakes not to make any transfer of its right in the SOFTWARE, or any part thereof to any third party unless the transferee undertakes to continue this Agreement with TACT and is able to comply with all VEGASOFT's commitments to TACT according to this agreement. VEGASOFT shall cause such transferee to execute a direct agreement with TACT, similar in essence to this Agreement.

    b.  TACT undertakes not to make any transfer of its right in the SOFTWARE, or any part thereof to any third party unless the transferee undertakes to continue this Agreement with VEGASOFT and is able to comply with all TACT's commitments to VEGASOFT according to this agreement. TACT shall cause such transferee to execute a direct agreement with VEGASOFT, similar in essence to this Agreement.

D. **MARKETING RESPONSIBILITIES AND OTHER DUTIES**

VEGASOFT will provide a reasonable amount of demonstration copies of SOFTWARE according to TACT's orders at no charge to TACT. In addition VEGASOFT will provide documentation for the SOFTWARE including sufficient number of copies of the Users Guide and installation instructions. TACT will return all VEGASOFT materials and SOFTWARE upon termination of this Agreement.

TACT is entitled to copy the demonstration copy and transfer such copy to a client either for trial installation or for permanent installation following the completion of a license agreement.

13. TACT agrees to use its best efforts in the promotion selling and provision of maintenance of SOFTWARE. TACT shall maintain and support the SOFTWARE as needed. TACT shall establish a maintenance and software support service to enable it to perform its obligations under this Agreement.

14. VEGASOFT shall make all upgrades and corrections to the SOFTWARE available to TACT as they become available. VEGASOFT shall provide TACT with 24 hour telephone technical support.

    VEGASOFT will provide TACT with the compiled listing for SOFTWARE. TACT will sign a non-disclosure agreement for VEGASOFT's protection. See Schedule "B"

15. **Training of TACT**

    VEGASOFT will provide training to TACT in the use of the SOFTWARE and its proper installation. The training shall take place in New York at no cost to TACT.

16. **Reports and Records**

    TACT shall maintain full, clear and accurate records with respect to each and every copy of the SOFTWARE licensed by TACT to its clients, and all receipts from installation and renewal of the SOFTWARE. By the end of each calendar quarter, TACT shall make a written report of all trials and sales instigated and completed during that quarter.

17. **Warranties and Liability**

    (i) VEGASOFT shall not be liable to TACT or to any other person for any loss or damage whatsoever or howsoever caused arising directly or indirectly in connection with the SOFTWARE, its licensing, maintenance or otherwise other than as imposed by the law relating to this Agreement. Notwithstanding the foregoing generality, VEGASOFT expressly excludes liability for consequential loss or damage including but not limited to loss of profits, business, revenue, goodwill or anticipated savings.

    (ii) TACT is hereby expressly forbidden to give any warranty relating to the SOFTWARE on behalf of VEGASOFT to any person whatsoever or to represent to any person that it has power to give any warranty.

18. **Patent or Copyright Infringement**

    VEGASOFT hereby warrants that it has the right to license the copying and distribution of SOFTWARE and distribution of Documentation and that it has the right and power to enter into this Agreement. VEGASOFT will indemnify TACT against any reasonable out-of-pocket expenses incurred by TACT by reason of any judgement entered and arising out of a breach of this paragraph provided that TACT shall within seven days of becoming aware of any such claim, give VEGASOFT written notice of such claim and not settle such claim without VEGASOFT's prior written notice. VEGASOFT shall provide all reasonable information and generally co-operate with TACT.

    VEGASOFT reserves the right, at its opinion and expense, to participate in or assume control of the defense and/or settlement of any claim of infringement of patent, copyright trade secret and/or similar proprietary rights, and TACT shall inform VEGASOFT without delay of any such claim so that VEGASOFT may have the opportunity to exercise its discretion hereunder.

19. **Termination**

    a. This Agreement shall terminate thirty (30) days after written notice of termination by one party to the other for breach of any provision, covenant or obligation of this Agreement.

 b. Upon termination TACT shall:

  (1) Discontinue use of the Licensed SOFTWARE, except as may be specifically permitted in writing by VEGASOFT at its sole discretion for the purpose of servicing existing agreements with TACTs clients;

  (2) Remove the SOFTWARE from any SOFTWARE in TACT possession or control that incorporates or uses the SOFTWARE in whole or in part;

  (3) Erase or destroy any of the SOFTWARE contained in the computer memory or data storage apparatus under control of TACT;

  (4) Deliver to VEGASOFT all SOFTWARE in TACT possession or control, together with all copies thereof.

  (5) Not, itself or through any agent or subsidiary sell, license, purport to license, market or otherwise deal in the SOFTWARE or any part thereof, or write the same or having the same written for it based on any technical or confidential information supplied to it by VEGASOFT or pursuant to this Agreement.

20. **General Terms**

 a. **Entire Contract.** This Agreement states the entire agreement between the parties and supersedes all proposals, oral or written, and all other communications between the parties relating to this Agreement.

 b. **Force Majeure.** Neither party shall be responsible for delays or failures in performance resulting acts beyond the control of such party. Such acts shall include, but not be limited to, acts of God, strikes, riots, acts of war, epidemics, fire, communication line failures, earthquakes, or other disasters.

 c. **Sub-affiliates.** TACT may, on a case-by-case basis with prior written consent from VEGASOFT (which may be withheld at VEGASOFTs sole discretion), establish sub-agencies for the purpose of promoting SOFTWARE sales. TACT agrees that all of its duties and obligations under this Agreement shall extend to all sub-affiliates and that it shall be the TACT's sole responsibility to monitor and ensure compliance with this Agreement.

 d. The determination by a court of law that any sub-section of this Agreement is unenforceable shall not avoid the entire Agreement and all other sub-sections shall continue in force.

e.  This Agreement shall be governed by The Board of Arbitration of the Central Chamber of Commerce in New York, U.S.A.

Any notices either party shall be deemed to be given if telexed or faxed to numbers below.

This Agreement is dated August 1 1991.

For VEGASOFT

*[signature]*

VEGASOFT OY

23 Harakkamyllyntie

Helsinki, Finland

00920

Tel: 358(0)3492468
Fax: 358(0)3497385

For TACT

*[signature]*

THE A CONSULTING TEAM, INC.

7 East 14th Street, 20th Floor

New York, New York 10003

USA

Tel: (212) 645-0446
Fax: (212) 645-4643

**SCHEDULE "A" - Standard License Agreement.**

See following four pages.

ADS/DB2

## Software License Agreement

Software License Agreement between The A Consulting Team, Inc. ( "TACT" ) and _____ ( "CLIENT" ).

This agreement sets forth the terms and conditions under which TACT will license CLIENT the use of the SOFTWARE listed in schedule A.

### LICENSE

In consideration of the license fee specified in schedule A, TACT grants to CLIENT a non transferable and non exclusive right to use the SOFTWARE in and only on the site(s) as indicated in Schedule A, or any site that is a direct and single replacement of said site(s).

### TAXES

In addition to payments made under this Agreement, CLIENT agrees to pay amounts equal to any taxes resulting from this Agreement.

### SOFTWARE LICENSE RENEWAL, UPGRADES AND MAINTENANCE

TACT agrees to provide upgrades and maintenance of the SOFTWARE for the first twelve months of this agreement at no additional charge. Upgrades will include refinements and corrections of the SOFTWARE as they become available. Maintenance includes telephone technical support and ongoing corrections of SOFTWARE errors.

The upgrades and correction of SOFTWARE errors cover the cost of the upgrades and corrections of SOFTWARE errors only. Integrating the upgrades and applying the corrections of SOFTWARE errors into the CLIENT's copy of the SOFTWARE shall be the responsibility of the CLIENT.

TACT agrees to provide to CLIENT refinements and corrections of the SOFTWARE as they become available. Should CLIENT desire renewal of this Software License Agreement, CLIENT agrees to pay an annual renewal fee as stated in Schedule A per SOFTWARE product per site for License renewal, upgrades and maintenance. The renewal fee will be invoiced annually as of the anniversary date of this agreement, prorated to the nearest month for SOFTWARE delivered less than *one year before invoice* date. This charge includes the updated SOFTWARE only and does not include installation and / or integration costs.

## PROPRIETARY DATA

TACT hereby warrants its ownership and/or exclusive marketing rights to the SOFTWARE. CLIENT acknowledges that the SOFTWARE constitutes trade secrets and proprietary data. Further, CLIENT acknowledges that irreparable harm could occur to TACT in the event of disclosure of such trade secretes and proprietary data, and CLIENT hereby agrees to take all reasonable steps to safeguard the proprietary data and trade secrets of TACT from disclosure to third parties, without the prior written consent of TACT, and in any event, to exercise the same degree of care CLIENT exercises with respect to its own proprietary data and trade secrets.

## LIMITATION OF LIABILITY

CLIENT agrees that except for liability for infringement of any UNITED STATES of AMERICA patent of copyright, trade secret or other proprietary right, TACT's LIABILITY for damages, regardless of the form of action, is limited to the license fee received under this agreement.

In no event will TACT be liable for any consequential damages, even if TACT has been advised of the possibility of such damages.

## WARRANTIES

TACT warrants that the SOFTWARE will perform in substantial compliance with the user documentation supplied with the SOFTWARE. TACT agrees as its sole obligation for breach of the foregoing warranty to use its best efforts to make the SOFTWARE operate in compliance with the user documentation. CLIENT must give written notice of problems to be corrected. TACT MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SOFTWARE, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE.

This above mentioned warranty will be in effect for a period of twelve months of this agreement at no additional cost. The warranty shall continue to be in effect as long as the CLIENT continues to pay the annual maintenance fee.

**MISCELLANEOUS**

This agreement shall be governed by the laws of the state of New-York.

CLIENT shall not be responsible for any billing errors over six (6) months old.

CLIENT agrees that it has read this Agreement, understands it and agrees to be bound by it. Further, CLIENT and TACT agree that this Agreement is the complete statement of terms and conditions for this transaction.

For CLIENT:

_____    _____    _____
authorized signature            Title         Date

_____                   _____
printed name                                  Anniversary Date

For TACT:

_____                   Vice President
authorized signature                          Title

Moshe Allon
_____                   _____
printed name                                  Date

Schedule 'A'

Software:    ADS/DB2

License Fee: $ xxxxxxxx

Annual License Renewal Fee:   15% of current price

Site(s):

## SCHEDULE "B" - Disclosure Agreement

See following pages.

Disclosure Agreement VS-91-08-02

# Vegasoft Oy

# DISCLOSURE AGREEMENT VS-91-08-02

THIS AGREEMENT is made the First day of August 1991 between

(1)   **Vegasoft Oy (Vegasoft)** whose registered office is at

   Harakkamyllyntie 23
   00920 Helsinki
   Finland

(2)   and **The A Consulting Team, Inc. (TACT)** having its registered office at

   7 East 14th Street
   New York, New York
   U.S.A

WHEREAS

1.   The parties agree that it is necessary and desirable that Vegasoft disclose to TACT confidential information (hereinafter referred to as "Vegasoft Information") concerning any or all of the following current, future, or proposed products:

   **VG-IRIS/DB2 (Vegasoft's Integrated Relational Interface System/DB2)**

   Compiled source listings and internal descriptions

2.   TACT agrees that the Vegasoft Information shall be used solely for:

   To enhance TACT's technical support of VG-IRIS/DB2 users in the Territory where TACT acts as the distributor of Vegasoft

3.   TACT shall not communicate Vegasoft Information to any third party and shall use its best efforts to prevent inadvertent disclosure of Vegasoft Information to any third party. Internal access shall be limited to TACT persons being responsible for the VG-IRIS/DB2 technical support.

4.   TACT shall neither use Vegasoft Information nor circulate it within its own organization except to the extent necessary for negotiations, discussions and consultations with personnel or authorized representatives or Vegasoft, the purposes of Paragraph 2 above, or for any purpose Vegasoft may hereafter authorize in writing. TACT shall maintain a list of TACT personnel permitted access to the Vegasoft Information and shall, upon request, provide Vegasoft with a copy of the list.

- 1 -

FROM VEGASOFT OY FINLAND                                    91.89.17 : 15:47                    P. 3

Disclosure Agreement VS-91-08-02

5. The obligations of Paragraph 2 and 3 hereof shall terminate with respect to any particular portion of the Vegasoft Information if:

   a) it was in the public domain at the time of Vegasoft's communication thereof to TACT;

   b) it entered public domain through no fault of TACT subsequent to the time of Vegasoft's communication to TACT;

   c) it was in TACT's possession free of any obligation of confidence at the time of Vegasoft's communication thereof to TACT;

   d) it was rightfully communicated to TACT free of any obligation of confidence subsequent to the time of Vegasoft's communication thereof to TACT;

   e) it was developed by employees or agents of TACT independently of and without reference to any Vegasoft Information or other information that Vegasoft has disclosed in confidence to any third party; or

   f) when it is communicated by Vegasoft to a third party free of any obligation of confidence.

6. All materials, including, without limitation, documents, system descriptions and manuals, designs, flow-charts and source and object media and listings furnished to TACT by Vegasoft shall be returned to Vegasoft promptly at its request with a certification that any copies have been destroyed. Other than copies required for the purposes of Paragraph 2 above, no copies **shall be made except by the specific authorization of Vegasoft.**

7. Communications from TACT to personnel and authorized representatives of Vegasoft shall not be in violation of the proprietary rights of any third party and shall be made without any obligation of confidence.

8. This agreement ___ ll govern all communications between Vegasoft and TACT during the period from ___ of Agreement to the expiration of the Distributor Agreement between Vegasoft and ___ CT.

   This Agreement shall be construed and governed in accordance with Finnish law and the parties hereto hereby submit to the jurisdiction of the Board of Arbitration of the Central Chamber of Commerce in Finland.

| Vegasoft | TACT |
|---|---|
| Name: _(signature)_ | Name: _(signature)_ |
| Title: MANAGING DIRECTOR | Title: _____ |
| Date: Aug 1, 1991 | Date: _____ |