UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------:
HELIOS & MATHESON NORTH                   :
AMERICA, INC., f/k/a                      :
THE A CONSULTING TEAM, INC.,              :      Crotty, J.
                                          :
             Plaintiff,                   :      CIV. NO.: 07 CV 3600
                                          :
      -against-                           :      **DECLARATION OF**
                                          :      **ONNI KUKKONEN**
VEGASOFT OY, A FINNISH                    :
CORPORATION,                              :
                                          :
             Defendant.                   :
------------------------------------------------------------:

ONNI KUKKONEN hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Chairman of the Board of the defendant, Vegasoft OY ("Defendant" or "Vegasoft"), and I submit this declaration in opposition to the motion of the plaintiff, Helios & Matheson North America, Inc. ("Plaintiff" or "Helios"), pursuant to Rule 65 of the Federal Rules of Civil Procedure for a mandatory preliminary injunction requiring Vegasoft to continue to provide Plaintiff with a "password generator" each quarter during the pendency of this action. Unless otherwise stated, the statements herein are based on my personal knowledge.

2.  I am informed by our counsel that Helios has included a claim for contract reformation in its Verified Complaint, and that to be entitled to this relief, Helios must show that the parties reached an agreement concerning Helios's right to renew Software licenses following the termination of the Distributor Agreement, but failed to reduce it to writing through a mutual mistake. Such a claim is categorically false.

3.  In June of 2002, I, sent a series of e-mails to Shmuel Bentov of Helios, concerning updates to the First Distributor Agreement. Copies of the e-mails that I exchanged with Mr. Bentov are annexed hereto as Ex. A.

#1178107 v1

4. In my first e-mail, dated June 25, 2002, I noted that the description of Vegasoft's Software products needed to be expanded to include new software products that had been developed during the 11 year period since the First Distributor Agreement was entered into, and further stated that I wanted to clearly define the level of customer support each company was responsible for under the Software License Agreement. At the time this exchange took place, Vegasoft was under pressure to decide whether to hire a support person at a salary of $80,000 to assist Vegasoft in providing software support to the Licensed Users, so it was important to me to define each parties' area of responsibility to the Licensed Users. In an e-mail, dated June 26, 2002, Mr. Bentov agreed that the First Distributor Agreement needed to be updated.

5. To speed up the process of revising the First Distributor Agreement, I undertook to revise the First Distribution Agreement himself, to add "a more exact definition of the Level I tech support in section 12." (See, my e-mail, dated June [kesäkuuta] 26 13:04). Although I sent several e-mails to Mr. Bentov requesting his comments to the proposed revisions, it was not until August 28, 2002, that Mr. Bentov sent his comments/"corrections" to the proposed revised Distributor Agreement. (See, Mr. Bentov's e-mail, dated August [elokuuta] 28, 2002 21:48).

6. I accepted all of Mr. Bentov's changes and sent Mr. Bentov a final version of the Second Distributor Agreement for execution. (See, Mr. Kukkonen's e-mail, dated August [elokuuta] 29, 2002 16:10).

7. A Comparison of the First Distributor Agreement and the Second Distributor Agreement reveals that the documents are substantially similar, and the differences in the two documents are not material to the issues before this Court. No changes were suggested or made to the termination provision of the First Distributor Agreement, which had been drafted by

Helios, apart from adding a provision that requires Helios to pay all amounts owing to Vegasoft when the Distributor Agreement is terminated.

8. No substantive changes were made to the Software License Agreement that was originally attached as Schedule A to the first Distributor Agreement. (In fact, it appears that the only change in the form of Software License Agreement was changing the punctuation in the section entitled "LICENSE").

9. Section 18(a) of the Second Distributor Agreement allows either party to terminate the Agreement without cause on 90 days written notice. Once the Second Distributor Agreement terminated, Helios has no further right or authority under the Second Distributor Agreement to (i) contact Licensed Users concerning the software without Vegasoft's consent, (ii) renew Software licenses, or (iii) receive any monies when and if the Software licenses are renewed. Vegasoft, on the other hand, has the right to contact the Licensed Users of Vegasoft's Software directly, support and maintain the software as needed, and renew their Software licenses.

10. Termination of the Second Distributor Agreement has no effect upon unexpired Software License Agreements between Helios and Licensed Users. Those Agreements remain in full force and effect until they expire according to their terms or are renewed by the Licensed Users with Vegasoft, or a corporation designated by Vegasoft to succeed Helios. Until such time, Helios and Vegasoft continue to provide service to the Licensed Users.

11. At no time did Vegasoft agree with Helios during their negotiation of the First Distributor Agreement or the Second Distributor Agreement that following the termination of either version of the Distributor Agreement, Helios would have the right to (i) renew Software licenses for all of the Licensed Users then extant, or any sub-set of those Licensed Users, or (ii)

collect annual renewal fees. Moreover, there was no discussion between the parties during the negotiation of either version of the Distributor Agreement about the possibility that some Licensed Users might not be able to contract directly with Vegasoft. This is why the Distributor Agreement does not contain the language that Helios is asking this Court to insert.

12. Indeed, as recently as May 10, 2007, the return date of Helios's order to show cause, Vegasoft was unaware of exactly which Licensed Users, if any, had restrictions upon their ability to enter into Software License Agreements, and Helios never advised Vegasoft that such restrictions existed. As a result, any suggestion that the parties agreed during their negotiation of either version of the Distributor Agreement to allow Helios to continue to renew Software licenses after the Distributor Agreement was terminated, is false.

13. For the reasons stated above, Helios's request for a preliminary MANDATORY injunction should be denied.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. Executed in Helsinki, Finland, on May 17th, 2007.

*[signature]*

**ONNI KUKKONEN**