UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- :

HELIOS & MATHESON NORTH                        :
AMERICA, INC., f/k/a                           :          Crotty, J.
THE A CONSULTING TEAM, INC.,                   :
                                               :          CIV. No.: 07 CV 3600
                   Plaintiff,                  :
                                               :          **SUPPLEMENTAL**
          -against-                            :          **DECLARATION OF**
                                               :          **ONNI KUKKONEN**
VEGASOFT OY, A FINNISH                          :
CORPORATION,                                   :
                                               :
                   Defendant.                  :

------------------------------------------------------------- :

ONNI KUKKONEN hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the Chairman of the Board of the defendant, Vegasoft OY ("Defendant" or

"Vegasoft"), and I submit this supplemental declaration in opposition to the motion of the

plaintiff, Helios & Matheson North America, Inc. ("Plaintiff" or "Helios"), pursuant to Rule 65

of the Federal Rules of Civil Procedure for a mandatory preliminary injunction requiring

Vegasoft to continue to provide Plaintiff with a "password generator" each quarter during the

pendency of this action.  Unless otherwise stated, the statements herein are based on my personal

knowledge.

2.  In his affidavit sworn to on May 17, 2007, Shmuel Bentov, the President of Helios

(the "Bentov Afd."), makes certain statements concerning his company, and the relationship

between Vegasoft and Helios that are demonstrably inaccurate and intentionally misleading.  I

make this supplemental declaration to address these statements.

3.  To begin with, Helios is a public company and is required to make regular filings

with the United States Securities and Exchange Commission.  These filings contain information

that directly rebut statements made by Mr. Bentov in his affidavit. Attached hereto as Exhibit A

#1178107 v2

is copy of Helios' Form 10-K for the fiscal year ended December 31, 2006 (the "Form 10-K").

The Form 10-K indicates that Helios & Matheson Information Technology Ltd. owns 52% of the

shares of Helios, and is itself a publicly traded company that is listed on a variety of international

stock exchanges. Oddly, this is not disclosed in Helios's Rule 7.1 Disclosure Statement.

4.  Mr. Bentov claims in his affidavit that the termination of the Distributor Agreement

"is a substantial financial setback and hardship for HELIOS". (Bentov Afd. ¶ 4). In fact, the

Form 10-K reveals that Helios's business relationship with Vegasoft, and the revenue Helios

derives from that relationship are insignificant to Helios's business.

5.  On page 2 and 3 of its Form 10-K, Helios describes its operations in detail. Under the

heading "Consulting, T&M, Projects, Outsourcing", Helios states that it derives over 90% of its

revenues from "a wide range of IT consulting services, including technology infrastructure

advisory services and systems architecture design for Fortune 1000 companies and other large

organizations."

6.  By contrast, under the heading "Software", Helios states as follows:

> [Helios] markets and distributes a number of software products
> developed by independent software developers. The Company
> believes its relationships with over 70 software clients throughout
> the country provide opportunities for the delivery of additional
> consulting and training services. The software products offered by
> [Helios] are developed in the United States, England and Finland
> and marketed primarily through trade shows, direct mail,
> telemarketing, client presentations and referrals. Revenue from the
> sale of software is ancillary to the Company's total revenues.
> (Emphasis added).

7.  On page 13 of its Form 10-K, Helios indicates that "[r]evenues from the sale of

software licenses are recognized upon delivery of the software to a customer, because future

obligations associated with such revenue are insignificant. The Company views software sales

as ancillary to its core consulting services business." (Emphasis added).

8. For the fiscal year ended December 31, 2006, Helios had gross revenues of $24.9 million. (Id. at F-5). By contrast, Mr. Bentov indicates that license renewals from Vegasoft Software generated in excess of $300K, or slightly in excess of 1.25% of Helios's gross revenues. (Bentov Afd. ¶ 4). Clearly, Mr. Bentov's claim in his affidavit that the termination of the Distributor Agreement is a "substantial financial setback" for Helios is a gross distortion, and was made solely to imply that his company will suffer great harm if an injunction is not entered. In fact, the latest Form 10-K reveals just how little financial impact the termination of the Distributor Agreement will have upon this "ancillary" part of Helios's business.

9. In paragraph 3 of his affidavit, Mr. Bentov lists the "contributions" that he claims Helios made to Vegasoft's business in the United States. These contributions consist of changing the name of products; developing the concept of license renewal fees; "inventing" the concept of "Components and a fee per component"; developing a pricing structure; and establishing a naming standard for the software tapes and the software fixes. (Id.) In fact, this is exactly what Helios was expected to do in marketing and selling the Software in the United States under the Distributor Agreement: *market* and *sell* using its knowledge of the American marketplace. For these services, Helios received the hefty sum of 50% of the renewal fees, every year, for the past 16 years.

10. Mr. Bentov does not explain what services Helios presently performs for Vegasoft or the Licensed Users under the Software License Agreements to earn 50% of the renewal fees. However, as I noted above, Helios admits in its Form 10-K that it recognizes all revenue from the delivery of software licenses upon delivery because Helios considers "future obligations associated with such revenue [to be] insignificant."

11. Mr. Bentov tries to take credit for adding functionality and enhancing product efficiency, and developing new products. This is absolutely false. Indeed, it has been a source of great consternation to Vegasoft that from Vegasoft's perspective, Helios does not provide enough technical support to the Licensed Users, yet, was entitled to 50% of the renewal fees. The Form 10-K reveals the reason why Helios consistently underperformed – Helios regards the software licensing business as "ancillary" to its main business - from which it derives 90% of its revenue.

12. Mr. Bentov next asserts that Vegasoft has contacted Helios's client to "destroy our business and gain full royalties for itself." (Bentov Afd. ¶ 5). This contact consists of communicating with the Licensed Users to advise them that the Distributor Agreement was terminated and inform them that they may renew their Software licenses with Vegasoft. (Id.). This is a remarkable statement since when Helios first filed its order to show cause it argued that it would suffer irreparable harm because Vegasoft intended to terminate the Distributor Agreement and refuse to renew the Software licenses. Now it is arguing that when Vegasoft reaches out to the Licensed Users to (i) inform them that the Distributor Agreement was terminated, and (ii) advise them as to how they may renew their Software licenses when the existing licenses expire, this contact is "tortious interference". I am advised by my counsel that Helios's argument is meritless as a matter of law.

13. The remainder of Mr. Bentov's strained arguments concerning the Distributor Agreement and the Software License Agreements are dealt with in Mr. Karjalainen's Declaration, and my Declaration. They are all meritless.

14. For the reasons stated above, Helios's request for a preliminary MANDATORY injunction should be denied.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in Helsinki, Finland, on May 18th, 2007.


_____

**ONNI KUKKONEN**