# EXHIBIT A

( Part 1(A) )

**Inflation**

The Company has not suffered material adverse affects from inflation in the past. However, a substantial increase in the inflation rate in the future may adversely affect customers' purchasing decisions, may increase the costs of borrowing, or may have an adverse impact on the Company's margins and overall cost structure.

## ITEM 7A. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK

The Company has not entered into market risk sensitive transactions required to be disclosed under this item.

## ITEM 8. FINANCIAL STATEMENTS AND SUPPLEMENTARY DATA

See financial statements on pages F-1 through F-22 of this Annual Report on Form 10-K.

## ITEM 9. CHANGES IN AND DISAGREEMENTS WITH ACCOUNTANTS ON ACCOUNTING AND FINANCIAL DISCLOSURE.

None.

## ITEM 9A. CONTROLS AND PROCEDURES

Evaluation of disclosure controls and procedures. The Company's Chief Executive Officer and Chief Financial Officer, after evaluating the effectiveness of the Company's "disclosure controls and procedures" (as defined in the Securities and Exchange Act of 1934 Rules 13a-15(e) and 15d-15(e)) as of the end of the period covered by this report, had concluded that our disclosure controls and procedures were effective and designed to ensure information required to be disclosed was recorded, processed, summarized and reported within time periods specified in the SEC's rules and forms.

Changes in internal controls. There were no changes in the Company's internal control over financial reporting that occurred during our fourth fiscal quarter of 2006 that has materially affected or is reasonably likely to materially affect our internal control over financial reporting.

## ITEM 9B. OTHER INFORMATION

On March 23, 2006, the Board adopted and approved amendments to the Company's Amended and Restated 1997 Stock Option and Award Plan (the "Plan") to eliminate Section 9.1.1 of the Plan, which granted to each new non-employee director who first becomes a non-employee director after the effective date of the Plan, an option to purchase 250 shares of the Company's common stock (the "Shares"), and Section 9.1.2 of the Plan, which granted each non-employee director who was re-elected as a non-employee director of the Company, an option to purchase 250 Shares upon re-election.

Also, on March 23, 2007, the Board approved an increase in non-employee Directors' compensation from $3,000 per quarter to $6,000 per quarter, effective as of the first quarter of 2007.

The Company has agreed to indemnify each Director to the fullest extent permitted under and in accordance with the laws of the State of New York. Since 2003 the Company has entered into Indemnification Agreements with its Directors. The Company has agreed to enter into its standard indemnification agreement with each Director appointed or elected in 2006. The Directors appointed or elected in 2006 are as follows: Rabin K. Dhoble, Shankar N. Ram, Daniel L. Thomas, Shri S. Jambunathan, Divya Ramachandran, and Kishan Grama Ananthram. The form of such Indemnification Agreement, as noted in Exhibit 10.7 to this 10-K, is incorporated by reference to Exhibit 10.10 to the Form 10-Q for the period ended September 30, 2003 as filed with the SEC on November 11, 2003.

19

Helios & Matheson Parent on March 26, 2007 granted the Company a non-exclusive right to use the name "Helios & Matheson" and related trademarks, service names and service marks. Helios & Matheson Parent has the right to terminate the Company's right to use such name and related trademarks and service marks upon each of the following events: (i) the Company duly and properly effectuates a change of the Company's corporate name which change is not consented to or approved by Helios & Matheson Parent; (ii) the Company consummates a business combination or merger, pursuant to which the Company is not the surviving corporation, or the Company consummates a sale of all or substantially all of its assets without the consent or approval of Helios & Matheson Parent and (iii) the Company files, or becomes a debtor subject to, a bankruptcy proceeding which proceeding or filing was not commenced by Helios & Matheson Parent or consented to by Helios & Matheson Parent.

## PART III

## ITEM 10. DIRECTORS, EXECUTIVE OFFICERS AND CORPORATE GOVERNANCE

The information concerning executive officers required by this item is contained in Item 4.01 entitled "Executive Officers of the Registrant", in Part I hereof. The information concerning compliance with Section 16(a) of the Exchange Act and the Company's Code of Ethics is set forth below in this Item 10. All other information required by this item is incorporated by reference to the Company's Proxy Statement for the 2007 Annual Meeting of Shareholders which will be filed with the SEC on or before April 30, 2007.

### Section 16(a) Beneficial Ownership Reporting Compliance

Section 16(a) of the Securities Exchange Act of 1934 requires the Company's directors, executive officers and certain beneficial owners of the Company's equity securities (the "Section 16 Reporting Persons") to file with the SEC reports regarding their ownership and changes in ownership of the Company's equity securities. The Company believes that, during the fiscal year 2006, its Section 16 Reporting Persons complied with all Section 16(a) filing requirements, except that (i) Helios & Matheson Parent filed one transaction late on a Form 3 filed in 2006, (ii) William Miller reported three transactions late on a Form 4 filed in 2006, (iii) Stephen Mukamal reported one transaction late on a Form 4 filed in 2006, (iv) Kishan Ananthram reported one transaction late on a Form 3 filed in 2006, (v) Rabin Dhoble reported two transactions late, one on a Form 4 filed in 2006 and one on a Form 3 filed in 2006, (vi) Srinivasaiyer Jambunathan reported one transaction late on a Form 3 filed in 2006, (vii) Shankar Ram reported one transaction late on a Form 4 filed in 2006, (viii) Divya Ramachandran reported one transaction late on a Form 3 filed in 2006, (ix) Daniel Thomas reported one transaction late on a Form 4 filed in 2006 and (x) Michael Prude reported one transaction late on a Form 3 filed in 2006. In making this statement, the Company has relied upon examination of the copies of Forms 3, 4 and 5 provided to the Company and the written representations of the Section 16 Reporting Persons.

### Code of Ethics

The Board of Directors has adopted a code of ethics designed, in part, to deter wrongdoing and to promote honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships, full, fair, accurate, timely and understandable disclosure in reports and documents that the Company files with or submit to the Securities and Exchange Commission and in the Company's other public communications, compliance with applicable governmental laws, rules and regulations, the prompt internal reporting of violations of the code to an appropriate person or persons, as identified in the code and accountability for adherence to the code. The code of ethics applies to all directors, executive officers and employees of the Company. The Company will provide a copy of the code to any person without charge, upon request to Ms. Jeannie Lovastik, Human Resources Generalist by calling 732-499-8228 or writing to Ms. Lovastik's attention at Helios & Matheson North America Inc., 77 Brant Avenue, Suite 320, Clark, New Jersey, 07066.

The Company intends to disclose any amendments to or waivers of its code of ethics as it applies to directors or executive officers by filing them on Form 8-K.

20

## ITEM 11. EXECUTIVE COMPENSATION.

The information required by this item is incorporated by reference to the Company's Proxy Statement for the 2007 Annual Meeting of Shareholders, which will be filed with the SEC on or before April 30, 2007.

## ITEM 12. SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT.

The information required by this item is incorporated by reference to the Company's Proxy Statement for the 2007 Annual Meeting of Shareholders, which will be filed with the SEC on or before April 30, 2007.

## ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS.

The information required by this item is incorporated by reference to the Company's Proxy Statement for the 2007 Annual Meeting of Shareholders, which will be filed with the SEC on or before April 30, 2007.

## ITEM 14. PRINCIPAL ACCOUNTANT FEES AND SERVICES.

The information required by this item is incorporated by reference to the Company's Proxy Statement for the 2007 Annual Meeting of Shareholders, which will be filed with the SEC on or before April 30, 2007.

## PART IV

## ITEM 15. EXHIBITS, FINANCIAL STATEMENT SCHEDULES, AND REPORTS ON FORM 8-K.

(a)(1) and (2) The response to this portion of Item 15 is submitted as a separate section of this report at F-1.

(a)(3) Listing of Exhibits

| Exhibit Number | Description of Exhibits |
|---|---|
| 3.1 | Restated Certificate of Incorporation of the Registrant. |
| 3.2.1 | Certificate of Amendment of the Certificate of Incorporation of the Registrant dated August 8, 2002. |
| 3.2.2 | Certificate of Amendment of the Certificate of Incorporation of the Registrant dated November 12, 2002. |
| 3.2.3 | Certificate of Amendment of the Certificate of Incorporation of the Registrant dated January 5, 2004. |
| 3.2.4 | Certificate of Amendment of the Certificate of Incorporation of the Registrant dated January 30, 2007. |
| 3.3 | Amended and Restated By-Laws of the Registrant, incorporated by reference to Exhibit 3.3 to the Registration Statement on Form SB-2 as previously filed with the SEC on August 6, 1997. |
| 3.4 | Amendment No. 1 to the Amended and Restated Bylaws of the Registrant incorporated by reference to Exhibit 3.4 to the Form 10-Q for the period ended June 30, 2003, as previously filed with the SEC on August 14, 2003. |

21

| Exhibit Number | Description of Exhibits |
|---|---|
| 4.1 | Specimen Common Stock Certificate. |
| 10.1.1 | Amended and Restated 1997 Stock Option and Reward Plan, incorporated by reference to Annex J to the Company's Definitive Proxy Statement, as previously filed with the SEC on June 27, 2005. |
| 10.1.2 | Amendment No. 1 to the Registrant's Amended and Restated 1997 Stock Option and Award Plan, incorporated by reference to Exhibit 10.2 on Form 8-K, as filed with the SEC on June 9, 2006. |
| 10.1.3 | Amendment No. 2 to the Registrant's Amended and Restated 1997 Stock Option and Award Plan. |
| 10.1.4 | Form of Restricted Stock Award Grant and Notice Agreement between the Registrant and each of its Non-Employee Directors, incorporated by reference to Exhibit 10.9 to the Form 10-Q for the nine months ended September 30, 2005, as previously filed with the SEC on November 14, 2005. |
| 10.1.5 | Form of Non-Qualified Stock Option Agreement between the Registrant and each of its Non-Employee Directors incorporated by reference to Exhibit 10.10 to the Form 10-Q for the nine months ended September 30, 2005, as previously filed with the SEC on November 14, 2005. |
| 10.2 | Amended and Restated Loan and Security Agreement between the Registrant and Keltic Financial Partners, LP, dated March 23, 2004, incorporated by reference to Exhibit 10.2 to the Form 10-K for the year ended December 31, 2003, as previously filed with the SEC on March 29, 2004. |
| 10.2.1 | First Modification dated March 23, 2005 to the Amended and Restated Loan and Security Agreement, incorporated by reference to Exhibit 10.2 to the Form 10-Q for the first quarter ended March 31, 2005, as previously filed with the SEC on May 12, 2005. |
| 10.2.2 | Amendment dated December 1, 2005 to the March 23, 2004 Amended and Restated Loan and Security Agreement incorporated by reference to Exhibit 10.2.2 to the Form 10-K for the fiscal year ended December 31, 2005, as previously filed with the SEC on March 29, 2006. |
| 10.3 | Employment Agreement, dated December 1, 2005, between the Registrant and Shmuel BenTov, incorporated by reference to Exhibit 10.1 to the Form 8-K dated December 12, 2005, as previously filed with the SEC on December 15, 2005. |
| 10.3.1 | Letter Agreement by and between the Registrant and Shmuel BenTov dated May 1, 2006, incorporated by reference to Exhibit 10.2 to the current report on Form 8-K, as previously filed with the SEC on May 1, 2006. |
| 10.4 | Form of S Corporation Termination, Tax Allocation and Indemnification Agreement, incorporated by reference to Exhibit 10.4 to the Registration Statement on Form SB-2, as previously filed with the SEC on August 6, 1997. |
| 10.5 | Letter of Undertaking from the Registrant and Shmuel BenTov, incorporated by reference to Exhibit 10.9 to the Registration Statement on Form SB-2, as previously filed with the SEC on July 23, 1997. |
| 10.6 | Shmuel BenTov Letter Commitment, dated March 29, 2001, incorporated by reference to Exhibit 10.10 to the Form 10-K for the fiscal year ended December 31, 2000, as previously filed with the SEC on April 2, 2001. |
| 10.7 | Form of Indemnification Agreement between the Registrant and certain of its Directors and its Chief Executive Officer, incorporated by reference to Exhibit 10.12 to the Form 10-Q for the period ended September 30, 2003 as filed with the SEC on November 11, 2003. |
| 10.8 | Employment Agreement, dated as of May 1 2006, between the Registrant and Salvatore M. Quadrino, incorporated by reference to Exhibit 10.1 to the current report on Form 8-K, as filed with the SEC on May 1, 2006. |

10.9    Form of Release and Covenant Not to Sue entered into by the Registrant releasing certain parties, incorporated by reference to Exhibit 10.1 on Form 8-K, as filed with the SEC on June 2, 2006.

22

| Exhibit Number | Description of Exhibits |
|---|---|
| 10.10 | Form of Release and Covenant Not to Sue entered into by the certain parties releasing the Registrant, incorporated by reference to Exhibit 10.2 on Form 8-K, as filed with the SEC on June 2, 2006. |
| 10.11 | Employment Agreement, dated as of December 16, 1998, by and between the Registrant and Michael Prude, incorporated by reference to Exhibit 10.1 on Form 8-K, as filed with the SEC on June 9, 2006. |
| 10.12 | Professional Services Agreement by and between the Registrant and IonIdea, Inc. |
| 10.13 | Key-Person Life Insurance Premium Sharing Agreement effective as of July 1, 2006 by and among the Registrant, Helios & Matheson Parent and Mr. Shmuel BenTov, incorporate by reference to Exhibit 10.1 on Form 8-K, as filed with the SEC on June 30, 2006. |
| 10.14 | Letter from Helios & Matheson Information Technology Ltd. dated March 26, 2007. |
| 23.1 | Consent of Grant Thornton, LLP. |
| 23.2 | Consent of Mercadien, P.C., Certified Public Accountants. |
| 31.1 | Certification of Chief Executive Officer pursuant to Section 302 of Sarbanes-Oxley Act of 2002. |
| 31.2 | Certification of Principal Financial Officer pursuant to Section 302 of Sarbanes-Oxley Act of 2002. |
| 32.1 | Certification of the Chief Executive Officer, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |
| 32.2 | Certification of the Principal Financial Officer, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002. |

(b) Exhibits – The response to this portion of Item 15 is submitted as a separate section of this report.

(c) Financial Statement Schedules – The response to this portion of Item 15 is submitted as a separate section of this report at S-1.

23

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**HELIOS & MATHESON NORTH AMERICA INC.**

By: /s/ Shmuel BenTov
     Shmuel BenTov,
     Chief Executive Officer
     Date: March 29, 2007

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
| --- | --- | --- |
| /s/ Shmuel BenTov<br>Shmuel BenTov | Chief Executive Officer (Principal Executive Officer) and Director | March 29, 2007 |
| /s/ Salvatore M. Quadrino<br>Salvatore M. Quadrino | Chief Financial Officer (Principal Financial and Accounting Officer) | March 29, 2007 |
| /s/ Steven Mukamal<br>Steven Mukamal | Director | March 29, 2007 |
| /s/ William Miller<br>William Miller | Director | March 29, 2007 |
| /s/ Rabin Dhoble<br>Rabin Dhoble | Director | March 29, 2007 |
| /s/ Shankar Ram<br>Shankar Ram | Director | March 29, 2007 |
| /s/ Daniel L. Thomas<br>Daniel L. Thomas | Director | March 29, 2007 |
| /s/ Shri S. Jambunathan<br>Shri S. Jambunathan | Director | March 29, 2007 |
| /s/ Divya Ramachandran<br>Divya Ramachandran | Director | March 29, 2007 |
| Kishan Grama Ananthram | Director | |

24

**ITEM 15 (a) (1) and (2)**

**HELIOS & MATHESON NORTH AMERICA INC.**

The following consolidated financial statements and financial statement schedule of Helios & Matheson North America Inc. are included in Item 8:

| | |
|---|---|
| Report of Independent Registered Public Accounting Firm – Mercadien, P.C. | F-2 |
| Report of Independent Registered Public Accounting Firm — Grant Thornton LLP | F-3 |
| Consolidated Balance Sheets | F-4 |
| Consolidated Statements of Operations and Comprehensive Income | F-5 |
| Consolidated Statements of Shareholders' Equity | F-6 |
| Consolidated Statements of Cash Flows | F-7 |
| Notes to Consolidated Financial Statements | F-8 |
| The following consolidated financial statement schedule of Helios & Matheson North America Inc. is included in Item 15(c): Schedule II – Valuation and Qualifying Accounts | S-1 |

All other schedules for which provision is made in the applicable accounting regulation of the SEC are not required under the related instructions or are inapplicable and therefore have been omitted.

F-1

**REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

Board of Directors
Helios & Matheson North America Inc.

We have audited the accompanying consolidated balance sheets of Helios & Matheson North America Inc. and Subsidiaries, (the "Company") as of December 31, 2006 and 2005, and the related consolidated statements of operations and comprehensive income, shareholders' equity, and cash flows for the years then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits. The financial statements of the Company for the year ended December 31, 2004 were audited by other auditors whose report, dated February 24, 2005, expressed an unqualified opinion on those statements.

We conducted our audits in accordance with auditing standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the 2006 and 2005 financial statements referred to above present fairly, in all material respects, the financial position of Helios & Matheson North America Inc. and Subsidiaries as of December 31, 2006 and 2005, and the results of its operations and its cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America.

Our audits were conducted for the purpose of forming an opinion on the basic financial statements taken as a whole. The Schedule II listed in the index of financial statements is presented for purposes of additional analysis and is not a required part of the basic financial statements. This schedule has been subjected to the auditing procedures applied in the audits of the basic financial statements and, in our opinion, is fairly stated in all material respects in relation to the basic financial statements for 2006 and 2005 taken as a whole.

Mercadien, P.C., Certified Public Accountants

Hamilton, New Jersey
March 27, 2007

F-2

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

Board of Directors

### Helios & Matheson North America Inc.
### (formerly The A Consulting Team, Inc.)

We have audited the accompanying consolidated statements of operations, shareholders' equity, and cash flows for the year ended December 31, 2004 of Helios & Matheson North America Inc. (formerly The A Consulting Team, Inc.) and Subsidiaries (the "Company"). These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audit included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the consolidated results of operations and cash flows of Helios & Matheson North America Inc. (formerly The A Consulting Team, Inc.) and Subsidiaries for the year ended December 31, 2004, in conformity with accounting principles generally accepted in the United States of America.

Our audit was conducted for the purpose of forming an opinion on the basic financial statements taken as a whole. The Schedule II listed in the index of financial statements is presented for purposes of additional analysis and is not a required part of the basic financial statements. This schedule has been subjected to the auditing procedures applied in the audit of the basic financial statements and, in our opinion, is fairly stated in all material respects in relation to the basic financial statements taken as a whole.

GRANT THORNTON LLP

New York, New York
February 24, 2005

F-3

**HELIOS & MATHESON NORTH AMERICA INC.**
**CONSOLIDATED BALANCE SHEETS**

| | December 31, 2006 | December 31, 2005 |
|---|---|---|
| **ASSETS** | | |
| Current Assets: | | |
| Cash and cash equivalents | $ 3,849,056 | $ 2,156,867 |
| Accounts receivable- less allowance for doubtful accounts of $225,741 at December 31, 2006, and $320,804 at December 31, 2005 | 3,676,869 | 3,918,371 |
| Unbilled receivables | 316,156 | 434,563 |
| Prepaid expenses and other current assets | 159,398 | 160,413 |
| Total current assets | 8,001,479 | 6,670,214 |
| Property and equipment, net | 457,223 | 480,845 |
| Goodwill | 1,140,964 | 1,140,964 |
| Deposits and other assets | 189,620 | 201,422 |
| **Total assets** | $ 9,789,286 | $ 8,493,445 |
| | | |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Current Liabilities: | | |
| Accounts payable and accrued expenses | $ 2,294,929 | $ 2,068,643 |
| Deferred revenue | 285,227 | 220,005 |
| Total current liabilities | 2,580,156 | 2,288,648 |
| | | |
| Shareholders' equity: | | |
| Preferred stock, $.01 par value; 2,000,000 shares authorized; no shares issued and outstanding as of December 31, 2006, and December 31, 2005 | — | — |
| Common stock, $.01 par value; 30,000,000 shares authorized; 2,382,801 issued and outstanding as of December 31, 2006 and 2,361,333 issued and outstanding as of December 31, 2005 | 23,828 | 23,614 |
| Paid-in capital | 34,607,651 | 34,462,262 |
| Accumulated other comprehensive income/(loss) — foreign currency translation | 3,949 | (2,927) |
| Accumulated deficit | (27,426,298) | (28,278,152) |
| Total shareholders' equity | 7,209,130 | 6,204,797 |
| **Total liabilities and shareholders' equity** | $ 9,789,286 | $ 8,493,445 |

See accompanying notes to consolidated financial statements.

F-4

**HELIOS & MATHESON NORTH AMERICA INC.**
**CONSOLIDATED STATEMENTS OF OPERATIONS AND COMPREHENSIVE INCOME**

| | Year Ended December 31, | | |
|---|---|---|---|
| | 2006 | 2005 | 2004 |
| Revenues | $24,940,153 | $26,431,967 | $25,035,167 |
| Cost of revenues | 17,669,075 | 18,631,523 | 17,361,526 |
| Gross profit | 7,271,078 | 7,800,444 | 7,673,640 |
| Operating expenses: | | | |
| Selling, general and administrative | 6,219,836 | 8,057,416 | 5,952,343 |
| Depreciation and amortization | 151,220 | 203,678 | 360,859 |
| | 6,371,056 | 8,261,095 | 6,313,202 |
| Income/(loss) from operations | 900,022 | (460,651) | 1,360,438 |
| Interest income | 69,422 | 17,611 | 8,664 |
| Interest expense | (401) | (24,724) | (33,313) |
| Interest income/(expense), net | 69,021 | (7,113) | (24,649) |
| Income/(loss) before income taxes | 969,043 | (467,764) | 1,335,789 |
| Provision for income taxes | 117,189 | 16,240 | 99,085 |
| Net income/(loss) | $ 851,854 | $ (484,004) | $ 1,236,705 |
| Other comprehensive income/(loss) — foreign currency adjustment | 6,876 | (2,927) | — |
| Comprehensive income/(loss) | $ 858,730 | $ (486,931) | $ 1,236,705 |
| | | | |
| Net income/(loss) per share | | | |
| Basic | $ 0.36 | $ (0.22) | $ 0.57 |
| Diluted | $ 0.35 | $ (0.22) | $ 0.53 |

See accompanying notes to consolidated financial statements.

F-5

## HELIOS & MATHESON NORTH AMERICA INC.
## CONSOLIDATED STATEMENTS OF SHAREHOLDERS' EQUITY

| | Preferred Stock Shares | Amount | Common Stock (*) Shares | Amount | Additional Paid-In Capital | Accumulated Other Comp Income | Accumulated Deficit | Total |
|---|---|---|---|---|---|---|---|---|
| Balance, December 31, 2003 | 571,615 | $ 5,716 | 2,107,959 | $21,080 | $34,161,628 | $ — | $(28,995,106) | $5,193,318 |
| Net income | — | — | — | — | — | — | $ 1,236,705 | 1,236,705 |
| Preferred dividend | — | — | — | — | — | | (26,850) | (26,850) |
| Exercise of employee stock options | — | — | 14,688 | 147 | 19,578 | — | — | 19,725 |
| Balance, December 31, 2004 | 571,615 | $ 5,716 | 2,122,647 | $21,227 | $34,181,206 | $ — | $(27,785,251) | $6,422,898 |
| Net loss | — | — | — | — | — | — | $ (484,004) | (484,004) |
| Preferred dividend | — | — | — | — | — | | (8,897) | (8,897) |
| Conversion of Preferred Stock | (571,615) | (5,716) | 142,903 | 1,429 | — | — | — | (4,287) |
| Restricted Stock Issuance | — | — | 30,000 | 300 | — | — | — | 300 |
| Exercise of employee stock options and warrants | — | — | 65,783 | 658 | 281,056 | — | — | 281,714 |
| Foreign Exchange Translation | — | — | — | — | — | (2,927) | — | (2,927) |
| Balance, December 31, 2005 | — | $ — | 2,361,333 | $23,614 | $34,462,262 | $ (2,927) | $(28,278,152) | $6,204,797 |
| Net Income | — | $ — | — | $ — | $ — | $ — | $ 851,854 | 851,854 |
| Exercise of employee stock options | — | $ — | 21,468 | $ 214 | $ 29,855 | $ — | $ — | 30,069 |
| Stock based compensation expense | — | $ — | — | $ — | $ 115,534 | $ — | $ — | 115,534 |
| Foreign Exchange Translation | — | $ — | — | $ — | $ — | $ 6,876 | $ — | 6,876 |
| Balance, December 31, 2006 | — | $ — | 2,382,801 | $23,828 | $34,607,651 | $ 3,949 | $(27,426,298) | $7,209,130 |

---

\*    Adjusted for the January 7, 2004 reverse stock split ( See Note 1)

See accompanying notes to consolidated financial statements.

F-6

**HELIOS & MATHESON NORTH AMERICA INC.**
**CONSOLIDATED STATEMENTS OF CASH FLOWS**

| | Year Ended December 31, | | |
|---|---|---|---|
| | 2006 | 2005 | 2004 |
| **Cash flows from operating activities:** | | | |
| Net income/(loss) | $ 851,854 | $ (484,005) | $1,236,705 |
| Adjustments to reconcile net income/(loss) to net cash provided by/(used in) operating activities: | | | |
| Depreciation and amortization | 151,220 | 203,679 | 360,859 |
| Deferred income taxes | — | (22,500) | (22,500) |
| Provision for doubtful accounts | 141,548 | 35,000 | 145,000 |
| Stock based compensation | 115,534 | — | — |
| Amortization of deferred financing cost | 12,000 | 12,000 | 10,000 |
| Compensation expense for restricted stock issued | — | 133,200 | — |
| Changes in operating assets and liabilities: | | | |
| Accounts receivable | 99,954 | (142,611) | (532,488) |
| Unbilled receivables | 118,407 | (174,563) | (126,395) |
| Prepaid expenses and other current assets | 1,015 | (20,709) | (53,150) |
| Accounts payable and accrued expenses | 226,286 | 98,487 | 223,431 |
| Deferred revenue | 65,222 | 220,005 | — |
| Net cash provided by/(used in) operating activities | 1,783,040 | (142,017) | 1,241,460 |
| | | | |
| **Cash flows from investing activities:** | | | |
| Purchase of property and equipment | (127,598) | (92,962) | (168,127) |
| Investments and advances | — | — | 250,450 |
| Deposits | (198) | — | (38,489) |
| Net cash (used in)/provided by investing activities | (127,796) | (92,962) | 43,834 |
| | | | |
| **Cash flows from financing activities:** | | | |
| Proceeds from the exercise of stock options | 30,069 | 144,527 | 19,726 |
| Payment of deferred financing cost | — | — | (40,000) |
| Dividend paid to Preferred Shareholders | — | (8,897) | (26,850) |
| Repayment of long-term debt | — | (233,962) | (154,690) |
| Net cash provided by/(used in) financing activities | 30,069 | (98,332) | (201,814) |
| Effect of foreign currency exchange rate changes on cash and cash equivalents | 6,876 | (2,927) | — |
| Net increase/(decrease) in cash and cash equivalents | 1,692,189 | (336,237) | 1,083,481 |
| Cash and cash equivalents at beginning of period | 2,156,867 | 2,493,104 | 1,409,623 |
| Cash and cash equivalents at end of period | $3,849,056 | $2,156,867 | $2,493,104 |
| | | | |
| **Supplemental disclosure of cash flow information:** | | | |
| Cash paid during the period for interest | $ 401 | $ 24,724 | $ 33,313 |
| Cash paid during the period for income taxes, net of refunds | $ 27,746 | $ 18,863 | $ 99,085 |

See accompanying notes to consolidated financial statements.

F-7

## HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

### 1. SIGNIFICANT ACCOUNTING POLICIES

*Description of Business and Basis of Presentation*

Helios & Matheson North America Inc. (formerly The A Consulting Team, Inc.) ("Helios & Matheson" or the "Company") was incorporated in the state of New York in February of 1983 and became a public company in August of 1997. The Company is headquartered in New York, New York and has offices in Clark, New Jersey and Bangalore, India. The Company provides a wide range of information technology ("IT") consulting, custom application development and solutions to Fortune 1000 companies and other large organizations. The Company supports all major computer technology platforms and supports client IT projects by using a broad range of third-party software applications.

*Reverse Stock Split*

On January 7, 2004, the Company effected a one-for-four reverse stock split of its common stock in order to regain compliance with NASDAQ's minimum bid price requirement to remain listed on the NASDAQ Capital Market$^{CM}$.

*Principles of Consolidation*

The consolidated financial statements include the accounts of Helios & Matheson North America Inc., its 100% owned subsidiary International Object Technology, Inc. ("IOT") from its date of acquisition on July 19, 2002 and its 51% owned subsidiary, T3 Media, Inc., which ceased operations in 2001, from its date of acquisition in 1999 and its 100% owned subsidiary TACT Global Services Private Limited ("TGS") from its date of acquisition on September 30, 2005. All material inter-company accounts and transactions have been eliminated.

Certain amounts reported in previous years have been reclassified to conform to the fiscal 2006 presentation. Such reclassifications were immaterial.

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

*Earnings Per Share*

The Company calculates earnings per share in accordance with Financial Accounting Standards Board ("FASB") Statement No. 128, Earnings Per Share. Basic earnings per share is calculated by dividing net earnings available to common shares by weighted average common shares outstanding. Diluted earnings per share is calculated similarly, except that it includes the dilutive effect of the assumed exercise of securities except when it is anti-dilutive, including the effect of shares issuable under the Company's incentive plans.

*Cash Equivalents*

The Company considers all highly liquid financial instruments with original maturity of three months or less when purchased to be cash equivalents.

*Fair Value of Financial Instruments*

The carrying value of financial instruments (principally consisting of cash, cash equivalents, accounts receivable, long term debt and capital leases) approximates fair value because of their short maturities.

F-8

### HELIOS & MATHESON NORTH AMERICA INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

*Property and Equipment*

Property and equipment are depreciated using the straight-line method over the estimated useful lives of the assets, which range from three to ten years.

*Long-Lived Assets*

The Company adopted the provisions of FASB Statement No. 144, "Accounting for the Impairment or Disposal of Long Lived Assets" effective January 1, 2002. When impairment indicators are present, the Company reviews the carrying value of its assets in determining the ultimate recoverability of their unamortized values using analyses of future undiscounted cash flows expected to be generated by the assets. If such assets are considered impaired, the impairment recognized is measured by the amount by which the carrying amount of the asset exceeded its fair value. Assets to be disposed of are reported at the lower of the carrying amount or fair value, less cost to sell.

*Goodwill and Intangible Assets*

The Company adopted the provisions of FASB Statement No. 142, "Goodwill and Other Intangible Assets," ("SFAS No. 142") effective January 1, 2002. SFAS No. 142 required that goodwill and intangible assets with indefinite useful lives no longer be amortized, but instead tested for impairment using the guidance for measuring impairment set forth in this statement. As prescribed under SFAS 142, the Company had an evaluation done of its goodwill and intangible assets, which was performed by an independent third party. The Company tested for impairment using the guidance for measuring impairment set forth in SFAS No. 142 and it was determined by the Company with the results from the independent third party that there was no impairment at December 31, 2006, 2005 and 2004.

Goodwill recorded on the balance sheet remains at $1,140,964 for the years ended December 31, 2006 and 2005.

The following summarizes the carrying amounts of acquired intangible assets and related amortization:

| | Year ended December 31, | | |
| --- | --- | --- | --- |
| | 2006 | 2005 | 2004 |
| Amortized intangible assets | | | |
|    Employee Contracts- gross carrying amount | $ — | $ 312,000 | $ 312,000 |
| Less accumulated amortization | — | (312,000) | (277,333) |
| Unamortized intangible assets | $ — | $ — | $ 34,667 |
| | | | |
| Amortization expense | | | |
|    For the year ended 12/31/04 | $ — | $ — | $ 69,333 |
|    For the year ended 12/31/05 | $ — | $ 34,667 | $ — |
|    For the year ended 12/31/06 | $ — | $ — | $ — |
| Estimated amortization expense: | | | |
|    For the year ended 12/31/07 | $ — | $ — | $ — |

As part of the purchase price of IOT (See Note 2), the Company recorded intangible assets pertaining to certain employment contracts. The cost of these employment contracts were being amortized over the three year period of the assets estimated useful life. During 2005, the Company recorded amortization expense of $34,667 and completed the amortization of these contracts.

*Revenue Recognition*

Consulting revenues are recognized as services are provided. The Company primarily provides consulting services under time and material contracts, whereby revenue is recognized as hours and costs are incurred. Customers for consulting

F-9

http://ir.10kwizard.com/filing.php?repo=tenk&ipage=4774257&num=&doc=1&source=12...    5/17/2007

### HELIOS & MATHESON NORTH AMERICA INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

revenues are billed on a weekly, semi-monthly and monthly basis. Revenues from fixed fee contracts are recorded when work is performed on the basis of the proportionate performance method, which is based on costs incurred to date relative to total estimated costs. Any anticipated contract losses are estimated and accrued at the time they become known and estimable. Unbilled accounts receivables represent amounts recognized as revenue based on services performed in advance of customer billings. A liability for deferred revenue is established for customer collections in excess of amounts earned under each contract. Revenue from sales of software licenses is recognized upon delivery of the software to a customer because future obligations associated with such revenue are insignificant.

*Accounts Receivable and Allowance for Doubtful Accounts*

Accounts receivable are stated at amounts due from customers, net of an allowance for doubtful accounts. The Company monitors its accounts receivable balances on a monthly basis to ensure that they are collectible. On a quarterly basis, the Company uses its historical experience to determine its accounts receivable reserve. The Company's allowance for doubtful accounts is an estimate based on specifically identified accounts as well as general reserves. The Company evaluates specific accounts where it has information that the customer may have an inability to meet its financial obligations. In these cases, management uses its judgment, based on the best available facts and circumstances, and records a specific reserve for that customer against amounts due to reduce the receivable to the amount that is expected to be collected. These specific reserves are reevaluated and adjusted as additional information is received that impacts the amount reserved. The Company also establishes a general reserve for all customers based on a range of percentages applied to aging categories. These percentages are based on historical collection and write-off experience. If circumstances change, the Company's estimate of the recoverability of amounts due the company could be reduced or increased by a material amount. Such a change in estimated recoverability would be accounted for in the period in which the facts that give rise to the change become known.

*Segment Information*

The disclosure of segment information in accordance with SFAS No. 131, "Disclosures about Segments of an Enterprise and Related Information" is not required as the Company operates in only one business segment.

*Stock-Based Compensation*

The Company accounts for equity instruments issued to non-employees in accordance with the provisions of SFAS 123 (R). During 2005, the Company recorded $133,200 of such related expenses. No such non-employee equity instruments were granted in either 2006 or 2004.

At December 31, 2006, the Company has a stock based compensation plan, which is described as follows:

The Company adopted a Stock Option Plan (the "Plan") that provides for the grant of stock options that are either "incentive" or "non-qualified" for federal income tax purposes. The Plan provided for the issuance of up to a maximum of 150,000 shares of common stock. On May 27, 1998, the shareholders approved and ratified an increase to the Plan from 150,000 to 225,000 shares of common stock, on May 24, 2001, the shareholders approved and ratified an increase to the Plan from 225,000 to 300,000 shares of common stock, on July 26, 2005, the shareholders approved and ratified an increase to the plan from 300,000 to 1,200,000 shares of common stock and other amendments to the plan and on June 5, 2006, the Board of Directors approved and ratified a decrease to the plan from 1,200,000 to 460,000 shares of common stock (subject to adjustment pursuant to customary anti-dilution provisions). Stock options generally vest over a period between one to four years.

The exercise price per share of a stock option is established by the Compensation Committee of the Board of Directors in its discretion, but may not be less than the fair market value of a share of common stock as of the date of grant. The aggregate fair market value of the shares of common stock with respect to which "incentive" stock options are exercisable for the first time by an individual to whom an "incentive" stock option is granted during any calendar year may not exceed $100,000.

Stock options, subject to certain restrictions, may be exercisable any time after full vesting for a period not to exceed ten years from the date of grant and terminate in connection with the termination of employment. Such period is to be established by the Company in its discretion on the date of grant.

F-10

## HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

In December 2004, the Financial Accounting Standards Board issued Statement 123 (revised 2004), Share Based Payment (Statement 123 (R) ). This Statement requires that the costs of employee share based payments be measured at fair value on the awards' grant date using an option-pricing model and recognized in the financial statements over the requisite service period. This Statement does not change the accounting for stock ownership plans, which are subject to American Institute of Certified Public Accountants SOP 93-6, "Employer's Accounting for Employee Stock Ownership Plans." Statement 123 (R) supersedes Opinion 25, Accounting for Stock Issued to Employees and its related interpretations, and eliminates the alternative to use Opinion 25's intrinsic value method of accounting, which the Company used through December 31, 2005. Statement 123 (R) allows for two alternative transition methods. The first method is the modified prospective application whereby compensation cost for the portion of awards for which the requisite service has not yet been rendered that are outstanding as of the adoption date will be recognized over the remaining service period. The compensation cost for that portion of awards will be based on the grant-date fair value of those awards as calculated for pro forma disclosures under Statement 123, as originally issued. All new awards and awards that are modified, repurchased, or cancelled after the adoption date will be accounted for under the provisions of Statement 123 (R). The second method is the modified retrospective application, which requires that the Company restates prior period financial statements. The modified retrospective application may be applied either to all prior periods or only to prior interim periods in the year of adoption of this statement. Effective January 1, 2006, the Company adopted the modified prospective application whereby compensation cost for the portion of awards for which the requisite service has not yet been rendered that are outstanding as of the adoption date will be recognized over the remaining service period. The compensation cost for that portion of awards is based on the grant-date fair value of those awards as calculated pro forma disclosures under Statement 123, as originally issued. All new awards and awards that are modified, repurchased, or cancelled after the adoption date will be accounted for under the provisions of Statement 123 (R). For the three and twelve months ended December 31, 2006, the Company recorded stock based compensation expense under the provisions of Statement 123 (R) of $31,146 and $115,534, respectively.

The following table illustrates the effect on net income and earnings per share if the Company had applied the fair value recognition provisions of SFAS No. 123 to stock based compensation:

|  | Year ended December 31, | |
|  | 2005 | 2004 |
| --- | --- | --- |
| Net (loss)/income, as reported | $(484,000) | $1,237,000 |
| Deduct: | | |
| Total stock based compensation expense determined under fair value based method for all awards | (3,000) | (20,000) |
| Pro forma net (loss)/income | $(487,000) | $1,217,000 |
| | | |
| Earnings per share: | | |
| Basic — as reported | $    (0.22) | $    0.57 |
| Basic — pro forma | $    (0.21) | $    0.57 |
| Diluted — as reported | $    (0.22) | $    0.53 |
| Diluted — pro forma | $    (0.21) | $    0.53 |

F-11

**HELIOS & MATHESON NORTH AMERICA INC.**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

The fair value of options at the date of grant was estimated using the Black-Scholes model with the following assumptions:

|  | 2006 | 2005 | 2004 |
|---|---|---|---|
| Expected life (years) | 4.00 | 4.00 | 4.00 |
| Risk free interest rate | 4.80% | 4.50% | 3.00% |
| Expected volatility | 0.40 | 0.95 | 0.96 |
| Expected dividend yield | 0.00 | 0.00 | 0.00 |
| Weighted average fair value per option | $4.37 | $4.83 | $3.53 |

The weighted average fair value of options granted by the Company was $4.37 in 2006, $4.83 in 2005, and $3.53 in 2004.

## 2. ACQUISITIONS

On April 11, 2005, the Company completed an investment in an offshore joint venture, TGS, in the amount of $250,000, which represented approximately a 68% ownership. A minority partner invested $100,000 for the remaining 32% ownership. In September 2005, the Company increased its ownership to 100% by purchasing the minority partners investment for $100,000. The Company has consolidated the results of TGS in its financial statements for the period from September 2005 to December 31, 2006, and recorded the Company's proportionate ownership share of the results of TGS from April 11, 2005 to September 2005.

On July 19, 2002, the Company consummated the acquisition of all of the issued and outstanding capital stock of IOT, a New Jersey corporation, pursuant to a Stock Purchase Agreement dated as of June 28, 2002 among Helios & Matheson, IOT and the holders of all of the issued and outstanding capital stock of IOT (the "IOT Shareholders"). Helios & Matheson acquired all of the issued and outstanding capital stock of IOT from the IOT Shareholders in exchange for an aggregate of three hundred seventeen thousand five hundred (317,500) shares of unregistered Helios & Matheson common stock, which has been retroactively adjusted to reflect the one-for-four reverse stock split that occurred on January 7, 2004, and was valued at $635,000 (the "Acquisition Shares") and the obligation to make certain deferred cash payments of six hundred fifty thousand ($650,000) in the aggregate (the "Deferred Payments"). The Acquisition Shares were issued by Helios & Matheson to the IOT Shareholders at the closing of the acquisition. Subject to the terms and conditions of the Stock Purchase Agreement, the Deferred Payments were payable as follows: (i) an aggregate of $140,000 on or before September 2, 2002, (ii) an aggregate of $210,000 on or before April 1, 2003, (iii) an aggregate of $100,000 on or before April 1, 2004, and (iv) an aggregate of $200,000 on or before January 2, 2005. The consideration paid by Helios & Matheson for the acquisition of IOT was determined through arms-length negotiation by the management of Helios & Matheson and a majority of the IOT Shareholders. The acquisition was accounted for under the purchase method of accounting for business combinations and the operations of IOT has been included from the date of acquisition. The purchase price of the acquisition exceeded the fair market value of the net assets acquired, resulting in the recording of goodwill of $1,181,520. The three majority shareholders of IOT received employment agreements for a three-year period at an annual salary of $160,000 per year each. The Company completed the amortization of these contracts during 2005.

IOT was a privately owned, professional services firm that provided data management and business intelligence solutions, technology consulting and project management services. IOT operated as a wholly owned subsidiary of Helios & Matheson until its operations were fully integrated into Helios & Matheson during the first quarter of 2006. The acquisition was made to increase the depth of the Company's services and solutions offerings and provide the Company with significant cross-selling opportunities.

The Company acquired a 51% ownership interest in T3 Media as a result of several investments in 1998 and 1999. Due to deterioration in performance and market conditions for T3 Media's services, the operations of T3 Media ceased in the second quarter of 2001. T3 Media had entered into a series of capital lease obligations, which the Company had guaranteed, to finance its expansion plans, covering leasehold improvements, furniture and computer-related equipment. The amount outstanding under such leases was approximately $291,000 at December 31, 2006 and 2005, respectively, and is included in accounts payable and accrued expenses on the balance sheet.

F-12

# HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

**3. INVESTMENTS**

The Company invested $500,000 in Methoda Computers Ltd. during 2000. In the third quarter of 2002, the Company wrote down its investment in Methoda Computer Ltd. in that same period in the amount of $132,000.

In January of 2004, the Company sold approximately 75 percent of its investment in Methoda for $200,000 in cash and $81,000 payable over the next twenty months, which was fully satisfied in 2005. The remaining investment had a carrying value of $87,000 as of December 31, 2006 and 2005 and is included in deposits and other assets on the balance sheet.

**4. NET INCOME (LOSS) PER SHARE**

The following table sets forth the computation of basic and diluted net income (loss) per share for the years ended December 31, 2006, 2005 and 2004.

| | Year Ended December 31, | | |
| --- | --- | --- | --- |
| | **2006** | **2005** | **2004** |
| **Numerator for basic net income(loss) per share** | | | |
| Net income/(loss) | 851,854 | (484,004) | 1,236,705 |
| Preferred Dividend | — | 8,897 | 26,850 |
| Net income/(loss) available to common stockholders | $ 851,854 | $ (492,901) | $1,209,855 |
| | | | |
| **Numerator for diluted net income(loss) per share** | | | |
| Net income/(loss) available to common stockholders & assumed conversion | $ 851,854 | $ (492,901) | $1,236,705 |
| | | | |
| **Denominator:** | | | |
| Denominator for basic earnings/(loss) before extraordinary item and net loss per share - weighted-average shares | 2,380,699 | 2,285,874 | 2,110,072 |
| Effect of dilutive securities: | | | |
| Preferred shares | — | — | 142,903 |
| Employee stock options | 24,247 | — | 59,046 |
| Denominator for diluted earnings/(loss) per share — adjusted weighted-average shares | 2,404,946 | 2,285,874 | 2,312,021 |
| | | | |
| **Basic earnings income/(loss) per share:** | | | |
| Net income/(loss) | $    0.36 | $    (0.22) | $    0.57 |
| | | | |
| **Diluted earnings income/(loss) per share:** | | | |
| Net income/(loss) | $    0.35 | $    (0.22) | $    0.53 |

During the year ended December 31, 2006 and 2004 there were 137,250 and 159,140 options, respectively, that were excluded from the computation of diluted earnings per share, because the options were not vested or the exercise price was in excess of the fair market value. All options and warrants outstanding during 2005 were not included in the computation of net loss per share because the effect would be antidilutive.

F-13

# HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

## 5. PROPERTY AND EQUIPMENT

Property and equipment, at cost, consists of the following:

|  | December 31, | |
|---|---|---|
|  | 2006 | 2005 |
| Equipment and leaseholds | $5,601,941 | $5,585,602 |
| Software | 1,088,446 | 990,845 |
| Furniture and fixtures | 1,113,650 | 1,113,650 |
| Automobiles | 139,968 | 158,769 |
|  | 7,944,006 | 7,848,866 |
| Less accumulated depreciation and amortization | 7,486,783 | 7,368,021 |
|  | $ 457,223 | $ 480,845 |

## 6. CREDIT ARRANGEMENT

The Company has a line of credit up to $4.0 million with Keltic based on the Company's eligible accounts receivable balances. Net availability at December 31, 2006 was approximately $2.0 million. The line of credit has certain financial covenants, which the Company must meet on a quarterly basis. There was no outstanding balance at December 31, 2006 or at December 31, 2005. On March 23, 2004, the line of credit was amended and restated to include the following: an extension to June 2007, the removal of the guarantee of the Chief Executive Officer and less restrictive financial covenants. On March 23, 2005, the agreement was restated and amended, again to, among other things, include a waiver to certain financial covenants that the Company failed to comply with in the first quarter ending March 31, 2005. On December 1, 2005, the agreement was further amended to reset the EBITDA covenant effective as of October 1, 2005. On March 28, 2006, the agreement was further amended to allow Mr. Shmuel BenTov, the Company's Chairman, Chief Executive Officer and President, and his family to sell their stock ownership in the Company to Helios & Matheson Information Technology Ltd. ("Helios & Matheson Parent") and to waive the default provision that required Mr. BenTov's ownership in the Company's outstanding shares not to fall below a level of 10%. The Company also failed to comply with the amended EBITDA covenant for the first quarter ending March 31, 2006 and a waiver was obtained from Keltic. The Company was in compliance with the financial covenants for the second, third and fourth quarters ending June 30, September 30 and December 31, 2006, respectively. The line of credit bears interest at a variable rate based on prime plus 1.75% and the rate was 10% at December 31, 2006. The line of credit currently expires on June 27, 2007.

The Company is prohibited from paying dividends on its common stock due to restrictions under the restated and amended Loan and Security Agreement with Keltic. Keltic has consented to the payment of dividends on the Series A and Series B Preferred Stock, provided an event of default does not exist. There were no outstanding shares of Series A or Series B Preferred Stock as of December 31, 2006 and 2005, respectively.

## 7. CONTRACTUAL OBLIGATIONS AND COMMITMENTS

The Company has the following commitments as of December 31, 2006: long term obligations of certain employment contracts, a capital lease obligation and operating lease obligations as well. One of the Company's subsidiaries, T3 Media, which ceased operations in 2001, had entered into a series of capital lease obligations, which the Company had guaranteed. The Company has two operating leases for its corporate headquarters located in New York and its branch office in New Jersey.

As of December 31, 2006, the Company does not have any "Off Balance Sheet Arrangements".

F-14

# HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

The Company's contractual obligations at December 31, 2006, are comprised of the following:

| Contractual Obligations | Total | Payments Due by Period | | | |
| --- | --- | --- | --- | --- | --- |
| | | Less Than 1 Year | 1 - 3 Years | 3 - 5 Years | More Than 5 Years |
| **Long Term Obligations** | | | | | |
| Employment Contracts | 690,000 | 540,000 | 150,000 | — | — |
| | | | | | |
| **Capital Lease Obligations** | | | | | |
| Capital Lease — Short Term | 290,517 | 290,517 | — | — | — |
| | | | | | |
| **Operating Leases** | | | | | |
| Rent (1) | 191,100 | 191,100 | — | — | — |
| | | | | | |
| **Total** | **$1,171,617** | **$1,021,617** | **$150,000** | **$—** | **$—** |

(1) The Company has a New York facilty with a lease term expiring July 31, 2007 and a New Jersey facility with a lease term expiring August 31, 2007. The Company is in the process of negotiating the renewals of both of these leases and considering alternative leasing arrangements.

## 8. ACCOUNTS PAYABLE AND ACCRUED EXPENSES

Accounts payable and accrued expenses consist of the following:

| | December 31, | |
| --- | --- | --- |
| | 2006 | 2005 |
| Accounts payable | $ 458,431 | $ 467,864 |
| Payroll | 492,881 | 484,745 |
| Bonuses | 116,000 | 59,956 |
| Capital Lease Obligation | 290,517 | 290,517 |
| Other accrued expenses | 937,100 | 765,560 |
| | $2,294,929 | $2,068,643 |

## 9. VANGUARD RELEASE

As of June 1, 2006, the Company and Mr. BenTov (the "Helios & Matheson Releasors") entered into and delivered general releases and covenants not to sue, pursuant to which the Helios & Matheson Releasors released and covenanted not to sue Vanguard and certain Vanguard-related persons, including (without limitation) its directors, officers, agents and certain advisors of Vanguard (the "Vanguard Released Parties"), in connection with any and all claims existing as of the date of such releases and covenants, including, without limitation, any claims that were related to the terminated Vanguard transaction. In connection therewith, the Company received an aggregate of $1,100,000 (without giving the affect to the Company's payment of $219,000 for fees and costs incurred in connection with this recovery), and the Company and certain related persons, including (without limitation) Mr. BenTov, received general releases and covenants not to sue from certain of the Vanguard Released Parties.

Selling, General and Administrative expenses have been reduced by net proceeds of $881,000 from the release of claims relating to the terminated Vanguard transaction for the twelve months ended December 31, 2006.

F-15

**HELIOS & MATHESON NORTH AMERICA INC.**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**

**10. INCOME TAXES**

The Company accounts for income taxes using the liability method in accordance with Statement of Financial Accounting Standards No. 109, "Accounting for Income Taxes" ("SFAS 109").

Deferred income taxes reflect the net tax effects of temporary differences between the carrying amounts of assets and liabilities for financial reporting purposes and the amounts used for income tax purposes.

Deferred tax assets and (liabilities) consist of the following:

| | December 31, | |
| --- | --- | --- |
| | **2006** | **2005** |
| Licensing revenues | $ (54,000) | $ (50,000) |
| Accounts receivable reserve | 113,000 | 128,000 |
| Depreciation and amortization | 212,000 | 214,000 |
| Investments | 928,000 | 928,000 |
| Other | 176,000 | 50,000 |
| Net operating losses | 4,409,000 | 4,675,000 |
| | 5,784,000 | 5,945,000 |
| Valuation allowance | (5,784,000) | (5,945,000) |
| | $ — | $ — |

Internal Revenue Code Section 382 places a limitation on the utilization of Federal net operating loss and other credit carry-forwards when an ownership change, as defined by the tax law, occurs. Generally, this occurs when a greater than 50 percentage point change in ownership occurs. On September 5, 2006, Helios & Matheson Parent acquired a greater than 50 percent ownership of the Company. Accordingly, the actual utilization of the net operating loss carry-forwards for tax purposes are limited annually under Code Section 382 to a percentage (currently about four and a half percent) of the fair market value of the Company at the date of this ownership change. Due to the Section 382 limitation on the use of net operating loss carry-forward, the 2006 federal current tax expense is $102,347.

At December 31, 2006, the Company has federal net operating loss carry-forwards of approximately $10 million which will begin to expire in 2020. In addition, the Company has state net operating loss carry-forwards of approximately $16.4 million remaining which will expire from 2009 to 2013. The full utilization of the deferred tax assets in the future is dependent upon the Company's ability to generate taxable income; accordingly, a valuation allowance of an equal amount has been established. During the year ended December 31, 2006, the valuation allowance decreased by $161,000 and during the years ended December 31, 2005 and 2004, the valuation allowance increased by $282,000 and decreased by $1,592,000, respectively.

Significant components of the provision for income taxes are as follows:

| | Year Ended December 31, | | |
| --- | --- | --- | --- |
| | **2006** | **2005** | **2004** |
| Current: | | | |
| Federal | $102,347 | $ — | $ 35,625 |
| State and local | 14,842 | 38,740 | 85,960 |
| Total Current | $117,189 | $ 38,740 | $121,585 |
| Deferred: | | | |
| Federal | — | — | (5,625) |
| State and local | — | (22,500) | (16,875) |
| Total Deferred | — | (22,500) | (22,500) |
| Total | $117,189 | $ 16,240 | $ 99,085 |

F-16

### HELIOS & MATHESON NORTH AMERICA INC.
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

A reconciliation between the federal statutory rate and the effective income tax rate for the years ended December 31, 2006, 2005, and 2004.

|  | 2006 | 2005 | 2004 |
|---|---|---|---|
| Federal statutory rate | 34.0% | (34.0)% | 34.0% |
| State and local taxes net of federal tax benefit | 0.6 | 2.3 | 5.7 |
| Non-deductible expenses | (5.7) | (25.1) | 5.4 |
| Change in valuation allowance | (16.81) | 60.27 | (37.68) |
| Total | 12.09% | 3.47% | 7.42% |

## 11. RETIREMENT PLAN

The Company sponsors a defined contribution plan under Section 401(k) of the Internal Revenue Code for its employees. Participants can make elective contributions subject to certain limitations. Under the plan, the Company can make matching contributions on behalf of all participants. There were no such contributions made by the Company in 2006, 2005 and 2004.

## 12. CONCENTRATION OF CREDIT RISK

Financial instruments, which potentially subject the Company to concentrations of credit risk, consist primarily of cash and accounts receivable. The Company maintains its cash balances on deposit with a limited number of financial institutions in amounts which may exceed federally insured limits. Historically, the Company has not experienced any related cash-in-bank losses. For the year ended December 31, 2006, the Company had four customers which accounted for 21%, 14%, 10% and 10% of revenues, respectively. For the year ended December 31, 2005, the Company had three customers which accounted for 21%, 20% and 15% of revenues, respectively. For the year ended December 31, 2004, the Company had two customers which accounted for 20% and 19% of revenues. Besides these customers, no other customer represented greater than 10% of the Company's revenues. Four customers represented approximately 10%, 11%, 12% and 16% of accounts receivable as of December 31, 2006, four customers represented approximately 10%, 15%, 15% and 23% of accounts receivable as of December 31, 2005, and three customers represented approximately 10%, 14% and 17% of accounts receivable as of December 31, 2004.

## 13. LEASES

The Company leases office space under non-cancelable operating leases. The future minimum payments for all non-cancelable operating leases as of December 31, 2006 are as follows:

| | |
|---|---|
| 2007 | 191,100 |
| Total minimum future lease payments | $191,100(1) |

---

(1)  The Company has a New York facilty with a lease term expiring July 31, 2007 and a New Jersey facility with a lease term expiring August 31, 2007. The Company is in the process of negotiating the renewals of both of these leases or seeking comparable space.

Office leases are subject to escalations based on increases in real estate taxes and operating expenses. Rent expense for the years ended December 31, 2006, 2005, and 2004, was approximately $293,288, $301,042 and $299,121, respectively.

In 2001, T3 Media stopped paying its capital lease obligations. The Company was a guarantor of the majority of these obligations. For the year ended December 31, 2006, $290,517 of T3 Media's capital lease obligations remained outstanding and is included in accounts payable and accrued expenses on the balance sheet.

F-17

## HELIOS & MATHESON NORTH AMERICA INC.
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

**14. STOCK OPTION PLAN**

The Company adopted a Stock Option Plan (the "Plan") that provides for the grant of stock options that are either "incentive" or "non-qualified" for federal income tax purposes. The Plan provided for the issuance of up to a maximum of 150,000 shares of common stock. On May 27, 1998, the shareholders approved and ratified an increase to the Plan from 150,000 to 225,000 shares of common stock, on May 24, 2001, the shareholders approved and ratified an increase to the Plan from 225,000 to 300,000 shares of common stock, on July 26, 2005, the shareholders approved and ratified an increase to the plan from 300,000 to 1,200,000 shares of common stock and on June 5, 2006, the Board of Directors approved and ratified a decrease to the plan from 1,200,000 to 460,000 shares of common stock (subject to adjustment pursuant to customary anti-dilution provisions). Stock options generally vest over a period between one to four years.

The exercise price per share of a stock option is established by the Compensation Committee of the Board of Directors in its discretion, but may not be less than the fair market value of a share of common stock as of the date of grant. The aggregate fair market value of the shares of common stock with respect to which "incentive" stock options are exercisable for the first time by an individual to whom an "incentive" stock option is granted during any calendar year may not exceed $100,000.

Stock options, subject to certain restrictions, may be exercisable any time after full vesting for a period not to exceed ten years from the date of grant and terminate in connection with the termination of employment. Such period is to be established by the Company in its discretion on the date of grant.

Information with respect to options under the Company's Plan is as follows:

|  | Number of Shares | Weighted Average Exercise Price |
|---|---|---|
| Balance — December 31, 2003 | 158,521 | $3.27 |
| Granted during 2004 | 154,750 | $4.61 |
| Exercised during 2004 | (14,688) | $1.34 |
| Forfeitures during 2004 | (43,020) | $4.94 |
| Balance — December 31, 2004 | 255,563 | $3.91 |
| Granted during 2005 | 15,750 | $4.67 |
| Exercised during 2005 | (56,032) | $2.19 |
| Forfeitures during 2005 | (9,188) | $5.64 |
| Balance — December 31, 2005 | 206,093 | $4.36 |
| Granted during 2006 | 37,750 | $5.08 |
| Exercised during 2006 | (21,468) | $1.40 |
| Forfeitures during 2006 | (32,469) | $4.83 |
| Balance — December 31, 2006 | 189,906 | $4.76 |

At December 31, 2006, 2005, and 2004, 98,656, 105,937, and 96,657, respectively, were exercisable with weighted average exercise prices of $4.71, $4.28, and $3.56, respectively.

F-18