UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
HELIOS & MATHESON NORTH　　　　　　　　:
AMERICA., INC.　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　　　　　:　　07 Civ. 3600 (PAC)
　　　　　　　　　　　　　　　　　　　　　　　:
　-　against -　　　　　　　　　　　　　　　:　　OPINION
　　　　　　　　　　　　　　　　　　　　　　　:　　AND ORDER
VEGASOFT OY,　　　　　　　　　　　　　　　:
　　　　　　　Defendant.　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Helios & Matheson North America, Inc. f/k/a The A Consulting Team, Inc. ("Helios") is the long-time sole distributor in the United States, Canada, Venezuela, and Israel, of software products (the "Software") owned and developed by Defendant Vegasoft Oy, a Finnish corporation ("Vegasoft"). Acting pursuant to a contract between the parties, Vegasoft terminated the distributorship. Helios sues Vegasoft for breach of contract, tortious interference with contract, reformation of contract, and permanent injunction, and moves for a preliminary injunction and a temporary restraining order pursuant to Fed. R. Civ. P. 65, compelling Vegasoft to provide a password generator so that Helios may continue to service its existing clients with Vegasoft's updated Software.

The Court declined to issue a temporary restraining order prior to a hearing on the motion for a preliminary injunction, which took place on May 21, 2007. The Court heard testimony at that time from two witnesses called by Helios: Matti Karajalainen ("Karajalainen"), the CEO of Vegasoft, and Shmuel Bentov ("Bentov"), the CEO of Helios. The Court allowed both parties to make post-hearing submissions. Upon reviewing the parties' submissions, and considering the testimony and exhibits at the

hearing, as well as the briefs and witness affidavits filed prior to the hearing, the Court now denies Helios' motion for a preliminary injunction.

## RELEVANT FACTS[1]

**I. The 2002 Agreement**

In 2002, the parties signed a Distributor Agreement (the "2002 Agreement") granting Helios exclusive rights to distribute the Software. The 2002 Agreement replaced a prior contract that had governed their relationship since 1991 (the "1991 Agreement"). The 2002 Agreement altered the royalty structure so as to grant Vegasoft 50% of all Helios revenue from sale or renewal of the Software, and required Helios to support the Software and establish a service to do so.

Under the 2002 Agreement, sales of the Software are considered final only upon receipt of a Software License Agreement ("SLA") "in the standard form," a copy of which was attached as Schedule A. Plaintiff's Exhibit 2 at ¶ 10. The standard SLA contains language arguably requiring Helios to automatically renew the software license on an annual basis at a client's request. It also limits Helios' liability to the amount of the license fees paid by the client.

The 1991 Agreement allowed for-cause termination on 30 days notice. The 2002 Agreement contains the same for-cause termination language, but added new language permitting either party to terminate without cause upon 90 days written notice. It is clear that Vegasoft added the 90 day termination clause. Bentov testified that Vegasoft never told him that it had added an at-will termination clause in its proposed new agreement. Vegasoft sent the proposed agreement to Bentov, who had it for more

---

[1] These facts are drawn from the parties' evidentiary submissions and the testimony given at the hearing. They are undisputed unless otherwise indicated.

than a week. He then signed the 2002 Agreement, initialing each of its seven pages. Bentov had an ample opportunity to review the agreement before signing, but he testified that he was not aware that such a clause was part of the contract until it was invoked in 2007. Under the 2002 Agreement, if the distributorship is terminated, Helios must cease using the Software "except as may be specifically permitted in writing by VEGASOFT **at its sole discretion** for the purpose of servicing existing agreements with [Helios'] clients." Id. at ¶18(b)(1) (emphasis added).

**II. Termination of the Agreement and Subsequent Events**

On February 9, 2007, Vegasoft gave Helios written notice of its termination of the 2002 Agreement effective May 10, 2007. Vegasoft has contacted Helios' existing licensees for the Software, informing them that Helios' distributorship has been terminated and that they should deal directly with Vegasoft to renew their licenses. One of those clients, Miami-Dade County, has indicated by email to Helios that it plans to contract with Vegasoft directly for renewal of the Software. Karajalainen also testified that he has been informed that General Electric has agreed to enter into a contract with Vegasoft.

**III. Future Impact of Termination**

Nine Helios clients are scheduled for renewal in June 2007, including the Iowa Department of Transportation and the U.S. Comptroller of the Currency. Vegasoft represented in Court that it is willing to renew all existing clients' Software, without the involvement of Helios. Five of these clients contract with Helios for other software

3

products in addition to the Software.  Helios also has four such multi-software clients whose renewals are not due until after July 1, 2007.

Helios asserts that its lost annual license renewal revenue due to Vegasoft's termination would be $340,000.  Helios had software sale and licensing revenues of approximately $1.5 million in 2006, and software consulting revenues of $23.4 million.  According to Bentov, Helios had approximate profits of $6 million from its consulting business and $750,000 from its software sale and licensing business.  Assuming the accuracy of this information, it supports Bentov's testimony that the Software sale and licensing business has a much higher profit margin than the consulting business.

## DISCUSSION

**I. Preliminary Injunction Standard**

"[A] party seeking a preliminary injunction must show that it is likely to suffer possible irreparable injury if the injunction is not granted and 'either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor.' Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 907 (2d Cir. 1990) (citing Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 314-15 (2d Cir. 1982).  A showing of irreparable injury is "the single most important prerequisite for the issuance of preliminary injunction," Bell & Howell: Mamiya Co. v. Masel Co. Corp., 719 F.2d 42, 45 (2d Cir. 1983) (internal quotations and citation omitted), and the injury must be both probable and imminent, not speculative or remote.  Reuters, 903 F.2d at

4

907. An essential component of an "irreparable" injury is that it is "incapable of being fully remedied by money damages." Id.[2]

**II. Irreparable Injury**

In its submissions to the Court, Helios has variously based its claim of irreparable injury on (1) its loss of renewal revenue; (2) its potential liability to its clients for breach of its licensing agreements; and (3) its loss of client good will and business reputation.[3] None of these arguments are sufficient to show irreparable injury.

Helios' lost revenue due to Vegasoft's termination is a tiny fraction of Helios' total revenue. Even when the higher profit margin for software sales and licensing is considered, the Vegasoft contribution to Helios' bottom line is still very small. Such a loss does not threaten Helios' existence as a business, and is entirely compensable in money damages if Helios can establish liability. Helios' concern regarding its breach of contract liability to its customers is similarly unpersuasive. First, the evidence before the Court provides no indication that Helios' clients are likely to initiate actions for breach of contract; the sole client communication, from Miami-Dade County, is notable for its lack of concern or hostility regarding the switch to Vegasoft. Second, Helios would likely have a complete defense to any claim of impossibility of performance. Third, Helios has not presented any evidence suggesting that its likely liability would threaten its existence as a business, and notwithstanding the bare

---

[2] Vegasoft argues that the heightened standard for mandatory injunctions should apply here, but as the Court finds Helios' showing insufficient even under more lenient standard for a prohibitory injunction, there is no need to rule on this issue.

[3] Helios seems to suggest at times that harm to its clients alone is sufficient to support an injunction, yet it has presented no authority for basing a preliminary injunction on a prospective injury to third parties. The Court therefore considers harm to Helios' clients only in the context of loss of good will and reputation.

assertions of counsel, there is no reason to believe the SLA's liability limitation clause is not binding on Helios' clients. Helios could therefore be made whole by money damages in the amount of its eventual liability, and a preliminary injunction is unwarranted.

Helios' argument concerning its loss of client good will and general business reputation is on a sounder footing. Helios argues that Vegasoft has disparaged its business capabilities by informing its clients that Vegasoft was terminating the distribution agreement. Helios also argues that its business reputation is based on its ability to guarantee renewal of software purchased by a client, and that allowing this at-will termination undercuts that reputation. Helios presents as additional support the admitted fact that the Software is a unique product, necessary for the proper functioning of some of the clients' other software. Helios relies primarily on <u>Supermarket Services, Inc. v. Hartz Mountain Corp.</u>, 382 F.Supp. 1248, 1257 (S.D.N.Y. 1974) and <u>Reuters</u> for the proposition that a distributor's inability to deliver a product creates a loss of good will and reputation sufficient to support a finding of irreparable injury, and that this is "almost inevitably" the case when the product is unique. <u>Reuters</u>, 903 F.2d at 908. These cases are entirely distinguishable, however, and on facts that render Helios' claims of lost good will and reputation speculative.

In <u>Supermarket</u>, the defendant supplier not only informed its former distributor's clients of the termination, but recommended new distributors to them, clearly implying that something was wrong with the former distributor. Here, Vegasoft made no negative assessment of Helios to its clients, either express or implied. Its motive appears to be to remove the distribution middleman and to capture all revenues from the

6

licenses. In such an instance there is no reason to believe that Helios' reputation was disparaged.

<p style="text-indent: 2em"><u>Supermarket</u> also differs from the present matter in that the plaintiff distributor was selling the supplier's products as part of a larger product line; inability to provide the supplier's products reduced the overall attractiveness of the larger line. <u>Reuters</u> similarly involved a product, foreign newspictures, that was integral to the larger product line of comprehensive news stories and newspictures offered by United Press International. A wire news service without newspictures or with pictures of inferior quality was less valuable, as a whole, than one with such pictures. In both cases, the "availability of a product…increases business of the plaintiff beyond sales of that product," and therefore loss of that product constitutes irreparable injury. <u>Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 28 (2d Cir. 1995). The Software is not part of a larger product offering, however, but is distributed as a stand-alone license. Helios' inability to provide the Software does not reduce the value of another product, nor does is there any reason to believe its availability increases sales of other products.</p>

Vegasoft has presented uncontradicted testimony that they will take all steps necessary to effectively renew the clients' Software for the current renewal fee.[4] The only evidence presented by Helios regarding its clients' reaction to the termination, a fact now known to all of them due to Vegasoft's notification, is the Miami-Dade County email and Bentov's testimony. The email suggests no loss of good will on the part of

---

[4] Helios attempts to show that Vegasoft is unprepared to service Helios' clients, arguing, <u>inter</u> <u>alia</u>, that Vegasoft is unaware of insurance that clients will require it to purchase, and that government clients such as the State of Iowa may not contract with a foreign corporation. Helios presents no evidence, however, that these obstacles are likely to cause an interruption in service to Helios' clients. Even if Vegasoft is making an uninformed decision, that does not mean Vegasoft must continue to do business with Helios.

Miami-Dade County, but rather an unconcerned understanding that the software owner is now moving to contract directly with clients. Bentov's testimony regarding feedback from his clients implicitly conceded that there had been no strong reactions, arguing that it was "very difficult" to know how they would react if the termination "bec[ame] an issue." Hearing Transcript, 63. There is therefore no substantive evidence concerning Helios' lost good will or damaged reputation. In light of Vegasoft's representations there is no reasonable prospect that unavailability or increased cost of a unique product will cause a loss of client good will. Similarly, it is not at all clear that Helios' business reputation will suffer due to concerns about its reliable delivery of promised services, where the clients for the Software have suffered no interruption of service or increased cost. In the absence of any evidence, except for Bentov's speculative testimony, the Court finds it is at best plausible, but not probable, that Helios could lose business beyond the Software renewals as a result of such concerns. Helios has failed to show irreparable injury, and therefore the Court may not issue an injunction.

**III. The Merits of the Claims**

Even if Helios had shown irreparable injury, it fails to raise substantial questions as to the merits of its claims. The plain language of the 2002 Agreement allows at-will termination, and permits Helios' use of the Software to service existing clients at Vegasoft's sole discretion. That agreement was signed by Bentov, after he had an ample opportunity to review it. It is no defense to say that he did not notice the 90 day termination clause until it was invoked 5 years after it was signed. Bentov and Helios are not only sophisticated actors engaged in a multi-million dollar business involving

precisely this type of agreement, but by their own assertion are substantially more sophisticated than Vegasoft and its officers. Helios has accordingly failed to raise any substantial question as to whether Vegasoft breached the 2002 Agreement. Nor has Helios alleged fraud or mutual mistake, as required for reformation of contract, and the record is devoid of evidence that would support either finding. Tortious interference with contract is entirely compensable with money damages, and so cannot be the basis for the injunction sought. Finally, the claim for a permanent injunction does not state a claim, merely a remedy.[5]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is DENIED. The Clerk of the Court is directed to close out this motion. The parties should confer and agree upon a proposed case management plan, and submit it to the Court. The appropriate civil case management form can be found on the Court's website.

Dated: New York, New York
       May 24, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

---

[5] Given its determinations as to irreparable injury and the merits of the claims, the Court need not address the balance of hardships between the parties.