UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------:
HELIOS & MATHESON NORTH            :
AMERICA, INC., f/k/a                          :
THE A CONSULTING TEAM, INC.,       :          Crotty, J.
                                                              :
           Plaintiff,                              :          CIV. NO.: 07 CV 3600
                                                              :
          -against-                              :
                                                              :          **AMENDED ANSWER**
VEGASOFT OY, A Finnish                   :          **AND COUNTERCLAIMS**
Corporation,                                         :
                                                              :
          Defendant.                            :
------------------------------------------------------------:

       Defendant, Vegasoft OY, a Finnish Corporation ("<u>Defendant</u>" or "<u>Vegasoft</u>"), by and through its undersigned counsel, as and for its Amended Answer and Counterclaims in response to the Verified Complaint (the "<u>Complaint</u>") of the plaintiff, Helios & Matheson North America, Inc. f/k/a The A Consulting Team, Inc. ("<u>Plaintiff</u>" or "<u>Helios</u>"), respectfully alleges as follows:

### ANSWERING THE FIRST CAUSE OF ACTION

    1.    Admits the allegations contained in paragraph 1 of the Complaint.

    2.    Admits the allegations contained in paragraph 2 of the Complaint.

    3.    Admits that on or about September 18, 2002, Defendant and the A Consulting Team, Inc. entered into a Distributor Agreement (the "<u>Agreement</u>") as alleged in paragraph 3 of the Complaint, and respectfully refers the Court to the Agreement for its terms and legal meanings.

    4.    Admits the allegations contained in Paragraph 4 of the Complaint.

    5.    Neither admits nor denies the allegations contained in paragraph 5 of the Complaint concerning the terms of Plaintiff's contracts with the CLIENTS, and respectfully

refers the Court to the various written contracts referred to therein for their terms and legal meanings, except admits that Plaintiff entered into written contracts with CLIENTS of Plaintiff.

6. Denies the allegations contained in paragraph 6 of the Complaint, except admits that Defendant advised Plaintiff in writing that it was terminating the Agreement as alleged in paragraph 6 of the Complaint, and respectfully refers the Court to said written notice for its terms and legal meanings.

7. Denies the allegations contained in paragraph 7 of the Complaint.

8. Admits that Defendant sent e-mails to some of the CLIENTS, and respectfully refers the Court to the e-mails referred to therein for their terms and legal meanings.

9. Denies the allegations contained in paragraph 9 of the Complaint.

10. Denies the allegations contained in paragraph 10 of the Complaint.

## ANSWERING THE SECOND CAUSE OF ACTION

11. Repeats and realleges its responses to the paragraphs referred to in paragraph 11 as if fully set forth herein.

12. Denies the allegations set forth in paragraph 12 of the Complaint.

13. Denies the allegations set forth in paragraph 13 of the Complaint.

## ANSWERING THE THIRD CAUSE OF ACTION

14. Repeats and realleges its responses to the paragraphs referred to in paragraph 14 as if fully set forth herein.

15. Admits the allegation contained in paragraph 15 of the Complaint that Defendant had no direct contractual relation with Plaintiff's CLIENTS at the time the Complaint was filed.

16. Denies the allegations contained in paragraph 16 of the Complaint.

17. Denies the allegations contained in paragraph 17 of the Complaint.

18. Denies the allegations contained in paragraph 18 of the Complaint.

**ANSWERING THE FOURTH CAUSE OF ACTION**

19. Repeats and realleges its responses to the paragraphs referred to in paragraph 19 as if fully set forth herein.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Denies the allegations contained in paragraph 22 of the Complaint.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

23. The Complaint fails to state facts sufficient to state a claim upon which relief may be granted.

**AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

24. In or about September of 2002, Defendant entered into a written Distributor Agreement (the "Distributor Agreement") with Plaintiff, pursuant to which Plaintiff was granted the exclusive right to market and license Defendant's proprietary computer software (the "Software") to third-party licensed users (the "Licensed Users") in a territory comprised of the United States, Canada, Venezuela and Israel.

25. Section 18 of the Distributor Agreement allows either party to terminate the Agreement without cause on ninety (90) days written notice.

26. Plaintiff licensed copies of the Software to Licensed Users in Plaintiff's sales territory pursuant to written Software License Agreements, and split 50% of the license and renewal fees with Defendant.

27. On February 9, 2007, Defendant sent a written notice to Plaintiff terminating the Distributor Agreement that was effective on May 10, 2007 (the "Termination Date").

28. Vegasoft contacted certain of the Licensed Users regarding the renewal of their Software License Agreements.

29. The statements made by Vegasoft to the Licensed Users regarding the renewal of their Software Licenses were true, and were made without malice and without intent to unlawfully injure Plaintiff.

30. Vegasoft had and has an existing economic interest in licensing the Software to the Licensed Users which it was and is privileged to protect.

31. By reason of the above, this action does not lie against Vegasoft.

**AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

32. Upon information and belief, some or all of the Software License Agreements are terminable at will.

33. Plaintiff cannot state a claim for tortious interference with existing contractual relations as to Software License Agreements that are terminable at will.

**AS AND FOR A FIRST COUNTERCLAIM**

The Parties & Jurisdiction

34. Vegasoft is a corporation organized and existing under the laws of Finland. Vegasoft is engaged in the business of developing computer software.

35. Upon information and belief, Helios is a domestic corporation (formerly known as "The A Consulting Team, Inc.") with offices located at 200 Park Avenue South, New York, New York, and is engaged in many business activities, including marketing and distributing computer software products developed by a number of independent software developers including Vegasoft.

36. This Court has jurisdiction over the counterclaims herein pursuant to 28 U.S.C. § 1367(a) because they arise out of and are so related to the same transactions and occurrences alleged in the Complaint so as to form a part of the same case or controversy under Article III of the United States Constitution.

Facts Common to All Counterclaims

37. In or about September 2002, Vegasoft and Helios entered into a written Distributor Agreement (previously defined herein as the "Distributor Agreement"), pursuant to which Helios was appointed the sole distributor to licensed users (previously defined herein as the "Licensed Users") of certain proprietary computer software (previously defined herein as the "Software") that was developed by Vegasoft, in the territory (the "Territory") comprised of the United States, Canada, Venezuela and Israel. A copy of the Distributor Agreement is annexed hereto as Exhibit A.

38. Pursuant to the Distributor Agreement, Helios was granted the exclusive right to market, support and maintain the Software in the Territory.

39. Pursuant to Section 12 of the Distributor Agreement, Helios agreed "to use its best efforts in the promotion selling and provision of maintenance of [the Software]."

40. Plaintiff licensed copies of the Software to Licensed Users in Plaintiff's Territory pursuant to written Software License Agreements, and split 50% of the license and renewal fees with Defendant.

41. On February 9, 2007, Defendant gave written notice to Plaintiff that Defendant was terminating the Distributor Agreement, effective as of May 10, 2007 (previously defined herein as the "<u>Termination Date</u>").

42. Following the Termination Date, Defendant learned that Plaintiff's Form 10-Q (the "<u>Form 10-Q</u>"), for the period ended September 2003, states as follows:

> Beginning in 1999 and extending through the current period, the Company has *limited its emphasis on software sales. This has resulted in a significant reduction in software sales* starting in the second half of 1999 through the current period. The current trend is expected to continue with software sales only being ancillary to the Company's IT solutions and services. (Emphasis added). <u>See</u>, Form 10-Q at p. 13.

43. At no time during the negotiation of the Distributor Agreement did Plaintiff disclose or otherwise provide notice to Defendant that Plaintiff had made a prior business decision to limit its emphasis on software sales.

44. Upon information and belief, Plaintiff's business decision to limit its emphasis on software sales included Defendant's Software.

45. Plaintiff's decision to limit its emphasis on software sales, including the Software, was made without notice to, the knowledge of, or the consent of Defendant.

46. But for Plaintiff's failure to disclose Plaintiff's prior business decision to limit its emphasis on software sales, Defendant would not have entered into the Distributor Agreement with Plaintiff.

47. During the period from September 2002, through the Termination Date, Plaintiff obtained only two (2) new customers for the Software.

48. Upon information and belief, Plaintiff did not actively market and promote the Software during the term of the Distributor Agreement.

49. Upon information and belief, Plaintiff did not respond to inquiries from potential customers for the Software in a timely or complete manner.

50. Plaintiff breached the Distributor Agreement by, among other things, reducing and limiting its marketing and promotional activities in connection with the Software, and failing to use its best efforts to promote and sell the Software to new customers.

51. Upon information and belief, Plaintiff's unilateral decision to limit computer software sales resulted in lost license and renewal fees for the Software.

52. By reason of the foregoing, Defendant has been damaged in an amount to be proved at the time of trial, but not less than $500,000.

**AS AND FOR A SECOND COUNTERCLAIM**

53. Defendant repeats and realleges the allegations set forth in paragraphs 34 to 52 with the same force and effect as if set forth fully herein.

54. Before, during and after the negotiation of the Distributor Agreement, Plaintiff negligently and intentionally failed to inform the Defendant that it had made a business decision in or about 1999 to limit its emphasis on software sales.

55. Before, during and after the negotiation of the Distributor Agreement, Plaintiff knew or should have known that Defendant would and did rely upon Plaintiff, as Defendant's exclusive representative in the Territory, to use its best efforts to promote and sell the Software to new customers and to generate Software License renewals among such new customers.

56. Plaintiff had a duty before, during and after the negotiation of the Distributor Agreement to Defendant, as Defendant's exclusive representative in the Territory, to notify Defendant that it had made a business decision to limit its emphasis on software sales.

57. Due to Plaintiff's negligent and intentional failure to notify Defendant that it had made a business decision to limit its emphasis on software sales, Defendant relied upon Plaintiff's agreement that it would use its best efforts to promote and sell the Software, and was induced to enter into the Distributor Agreement.

58. The negligent and intentional omissions of the Plaintiff were the proximate cause of damage to the Defendant.

59. Upon information and belief, Plaintiff's unilateral decision to limit computer software sales resulted in lost license and renewal fees for the Software.

60. By reason of the foregoing, Defendant has been damaged in an amount to be proved at the time of trial, and is entitled to recover compensatory and punitive damages.

**AS AND FOR A THIRD COUNTERCLAIM**

61. Defendant repeats and realleges the allegations set forth in paragraphs 34 to 60 with the same force and effect as if set forth fully herein.

62. At the time that Plaintiff represented and agreed that it would use its best efforts to promote and sell the Software, that representation and agreement were false in that Plaintiff

8

did not intend to, nor did thereafter, use its best efforts to promote and sell the Software to new customers, because Plaintiff had previously made a business decision to limit its emphasis on software sales.

63. Plaintiff failed to disclose and concealed the fact that it had previously made a business decision to limit its emphasis on software sales.

64. Plaintiff's silence concerning its business decision to limit its emphasis on software sales was and is inconsistent with honest dealings under all of the circumstances set forth herein, including, the nature of the relationship between the parties.

65. Plaintiff had legal duty to disclose the fact that it had made a business decision to limit its emphasis on software sales before, during and after the negotiation of the Distributor Agreement.

66. Plaintiff deliberately represented and agreed that it would use its best efforts to promote and sell the Software, and concealed the fact that it had previously made a business decision to limit its emphasis on software sales, to induce Defendant to rely and act thereon, and enter into the Distributor Agreement.

67. At the time the misrepresentations and omissions were made by Plaintiff, and its true intentions were not disclosed and were concealed, Defendant did not know said misrepresentations were false, and was unaware of the omissions, but believed them to be true, relied upon them and entered into the Distributor Agreement.

68. Defendant would not have entered into the Distributor Agreement if it had known the truth regarding the Plaintiff's decision to limit its emphasis on software sales.

69.     Plaintiff's misrepresentations and silence regarding Plaintiff's decision to limit its emphasis on software sales were the proximate cause of damage to the Defendant.

70.     By reason of the foregoing, Defendant has been damaged in an amount to be proved at the time of trial, and is entitled to recover compensatory and punitive damages.

## AS AND FOR A FOURTH COUNTERCLAIM

71.     Defendant repeats and realleges the allegations set forth in paragraphs 34 to 70 with the same force and effect as if set forth fully herein.

72.     Upon information and belief, in or about September, 2006, Plaintiff incorrectly billed Consumer's Energy, a Licensed User of the Software, for the sum of $11,857.50, rather than $23,715.00.

73.     Defendant provided written notice to Plaintiff of the billing error in the invoice that was sent to Consumer's Energy (invoice number 26347), and requested that Plaintiff remit to Defendant its share of the amount that was due and owing from Consumer's Energy in the amount of $5,928.75.

74.     Plaintiff failed to remit to Defendant its share of the amount that was due and owing from Consumer's Energy despite demand therefor.

75.     Plaintiff breached the Distributor Agreement by failing to remit to Defendant its share of the amount that was due and owing from Consumer's Energy.

76.     By reason of the foregoing, Defendant has been damaged in an amount to be proved at trial, but not less than $5,928.75.

**AS AND FOR A FIFTH COUNTERCLAIM**

77.     Defendant repeats and realleges the allegations set forth in paragraphs 34 to 76 with the same force and effect as if fully set forth herein.

78.     It was understood and agreed by Plaintiff and Defendant, that Plaintiff would bill Licensed Users of the Software for each and every mainframe computer (a/k/a central processing unit or "CPU") on which the Software was installed based upon an agreed price list that was accepted by both parties.

79.     Upon information and belief, some or all of the Licensed Users created disaster recovery sites to use as backup sites in the event of an emergency. Upon information and belief, some or all of these disaster recovery sites utilize the Software.

80.     Upon information and belief, Plaintiff was aware that some or all of the Licensed Users were using the Software in computer(s) on which they maintained their disaster recovery sites but failed to invoice any of them for their use of the Software in connection with these disaster recovery sites.

81.     Prior to the Spring of 2007, Plaintiff failed to disclose or otherwise provide notice to Defendant that the Licensed Users were using the Software on their disaster recovery sites, or that Plaintiff was not invoicing the Licensed Users for the license fees or renewal fees that were due and owing from said Licensed Users for their use of the Software.

82.     In the Spring of 2007, Plaintiff indicated to Defendant that Plaintiff was unable to account to Defendant regarding how many disaster recovery sites exist, apart from reporting to Defendant that most of the Licensed Users have such disaster recovery sites and have installed the Software on such sites.

83. Upon information and belief, Plaintiff's unilateral decision not to invoice licensed users of the Software for the use of the Software on their disaster recovery sites has resulted in lost license fees, and lost renewal fees.

84. Plaintiff breached the Distributor Agreement by, among other things, failing to keep track of the use of the Software on disaster recovery sites created by the Licensed Users, and by failing to invoice said Licensed Users for the appropriate license fees and renewal fees for said use of the Software.

85. By reason of the foregoing, Defendant has been damaged in an amount to be proved at the time of trial, but not less than $200,000.

**WHEREFORE**, defendant, Vegasoft OY, demands judgment against the plaintiff, Helios & Matheson North America, Inc. f/k/a The A Consulting Team, Inc., as follows:

(a) dismissing the Verified Complaint, and awarding judgment in favor of Defendant, together with its attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action;

(b) on the First Counterclaim, Defendant demands judgment against Plaintiff in an amount to be determined at trial, but not less than $500,000, together with pre- and post-judgment interest, attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action;

(c) on the Second Counterclaim, Defendant demands judgment against Plaintiff in an amount to be determined at trial, together with punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action;

(d) on the Third Counterclaim, Defendant demands judgment against Plaintiff in an amount to be determined at trial, together with punitive damages, pre- and post-judgment interest, attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action;

(e) on the Fourth Counterclaim, Defendant demands judgment against Plaintiff in the amount of $5,928.75, together with pre- and post-judgment interest, attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action;

(f) on the Fifth Counterclaim, Defendant demands judgment against Plaintiff in an amount to be determined at trial, but not less than $200,000, together with pre- and post-judgment interest, attorneys' fees and expenses, and court costs incurred by Defendant with respect to this action; and

(g) awarding to Defendant such other and further relief as to this Court is just and proper.

Dated:  New York, New York
        July 10, 2007

SILLS CUMMIS EPSTEIN & GROSS, P.C.
Attorneys for Defendant

By: /s/ John Carlson
John Carlson (JC8183)
Marc S. Friedman (MF8192)
One Rockefeller Plaza
New York, New York  10020
(212) 643-7000

To:

STEPHEN H. GERSOWITZ, ESQ.
Attorney for the Plaintiff
14 Wall Street, 19th Flr.
New York, New York  10005
(212) 422-8498